## ZELLERBACH PAPER CO. *v.* HELVERING, COMMISSIONER OF INTERNAL REVENUE.*

Nos. 37 and 38. Argued October 17, 1934.—Decided November 5, 1934.

---

*Together with No. 39, *National Paper Products Co.* v. *Helvering, Commissioner of Internal Revenue,* certiorari to the Circuit Court of Appeals for the Ninth Circuit.

*Mr. John Francis Neylan,* with whom *Mr. J. Paul Miller* was on the brief, for petitioners.

*Assistant to the Attorney General Stanley,* with whom *Solicitor General Biggs, Assistant Attorney General Wideman,* and *Mr. James W. Morris* were on the brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The controversy in these cases hinges upon the date when the statute of limitations began to run against deficiency assessments by the Commissioner of Internal Revenue.

On July 16, 1921, Zellerbach Paper Company filed a consolidated income and profits tax return in behalf of itself and a subsidiary, National Paper Products Com-

pany, for the fiscal year beginning May 1, 1920, and ending April 30, 1921.

On March 15, 1921, it filed an income and profits tax return for the calendar year 1920 in behalf of A. S. Hopkins Company, a dissolved subsidiary, including in its own consolidated return the income of the A. S. Hopkins Company between January 1, 1921 and the date of dissolution.

At the filing of these returns the income and profits tax statute applicable to the taxpayers was the Revenue Act of 1918 (40 Stat. 1057). Later (on November 23, 1921) another tax statute, the Revenue Act of 1921 (42 Stat. 227), became a law, with a provision (§ 263) that it should take effect retroactively as of January 1, 1921.

By the Act of 1921 (§ 239a) every corporation subject to taxation thereunder was required to " make a return, stating specifically the items of its gross income and the deductions and credits allowed by this title." Treasury Decisions issued by the Commissioner in March, 1922 (T. D. 3305, March 16, 1922, amended by T. D. 3310, March 28, 1922 [1]) gave notice in substance that taxpayers who had filed returns under the Act of 1918 and who were subject to an additional tax for the same period under the Act of 1921, should file a new or supplemental return covering such additional tax. By implication this was a ruling that an additional return was not required of taxpayers whose taxes were not increased by the new law.

---

[1] The text of the amended decision is as follows:

" If any taxpayer has, before November 23, 1921, filed a return for a fiscal year ending in 1921, and paid or become liable for a tax computed under the revenue act of 1918, and is subject to additional tax for the same period under the revenue act of 1921, a return covering such additional tax shall be filed at the same time as the returns of persons making returns for the fiscal year ending February 28, 1922, are due under the laws and regulations, and payment of such additional tax will be due in the same installments and at the same times as in the case of payments based on returns for the fiscal year ending February 28, 1922. . . ."

By implication also the new return was to be limited to a statement of the facts or figures necessary to exhibit the additions, without repetition of facts or figures that had been well returned already.

The Act of 1921 in its application to the petitioners made one change and one only. If the net income of the taxpayer was more than $25,000, there was to be a denial of the credit or exemption of $2,000 otherwise allowable. § 236b. The fiscal year of the petitioners ran, as we have seen, from May 1, 1920, to April 30, 1921, and of this period one-third was in the calendar year 1921. The net income being largely in excess of $25,000, the effect of the new law was to cut down the permissible credit by one-third of $2,000, thus increasing the tax by little more than a nominal amount. What that amount was could be ascertained by a simple computation, dependent upon data fully supplied by the return already filed, and calling only for the application of the statutory rule.

The petitioners did not make a new or supplemental return correcting the computation in the one on file. The change was so trivial and so obvious as perhaps to lead them to believe that no amendment was expected. Be that as it may, they heard nothing more from the Bureau of Internal Revenue with reference to their taxes till May 11, 1928, an interval of nearly seven years, when they received from the Commissioner notices of deficiency assessments in large amounts upon grounds unrelated (except for the deduction already mentioned) to any changes in the law. The Revenue Act of 1921 provides (§ 250d) that income and profits taxes shall be determined and assessed by the Commissioner within four years after a return is filed. If the return filed by the petitioners or in their behalf in July, 1921, served to set in motion the term of limitation, the assessments were too late. The Board of Tax Appeals, however, upheld the action of the Commissioner, and ruled (two members dissenting) that

the return on file was a nullity, and hence that the statute of limitations had never been set running. 26 B. T. A. 96. The Court of Appeals for the Ninth Circuit affirmed. 69 F. (2d) 852. In so doing, it refused to follow decisions directly to the contrary by courts of coördinate jurisdiction. *Myles Salt Co., Ltd.* v. *Commissioner,* 49 F. (2d) 232 (Fifth Circuit); *Isaac Goldmann Co.* v. *Commissioner,* 60 App. D. C. 265; 51 F. (2d) 427 (Court of Appeals, District of Columbia); *Valentine-Clark Co.* v. *Commissioner,* 52 F. (2d) 346 (Eighth Circuit). Because of that conflict writs of certiorari were granted by this Court. 292 U. S. 621.

The opinion of the court below rests heavily upon the argument that what is required by the statute is a return under the act, and that this excludes by implication a return by the taxpayer before the act became a law. Various sections are cited as enforcing that conclusion. See, e. g., §§ 205a, 239a, 250d, which so far as material are quoted in the margin.[2]  But the Act of 1921 was retro-

---

[2] § 205a: ".That if a taxpayer makes return for a fiscal year beginning in 1920 and ending in 1921, his tax under this title for the taxable year 1921 shall be the sum of: (1) the same proportion of a tax for the entire period computed under Title II of the Revenue Act of 1918 at the rates for the calendar year 1920, which the portion of such period falling within the calendar year 1920 is of the entire period, and (2) the same proportion of a tax for the entire period computed under this title at the rates for the calendar year 1921, which the portion of such period falling within the calendar year 1921 is of the entire period."

§ 239a: "That every corporation subject to taxation under this title and every personal service corporation shall make a return, stating specifically the items of its gross income and the deductions and credits allowed by this title."

§ 250d: "The amount of income, excess-profits, or war-profits taxes due under any return made under this Act for the taxable year 1921 or succeeding taxable years shall be determined and assessed by the Commissioner within four years after the return was filed, . . ."

active (§§ 263, 1400), taking effect, as we have seen, as of the beginning of the year. Being law by relation, to the disadvantage of the taxpayer, in respect of the burden of his tax, it may well have been law by relation to his benefit in respect of the form and time of his return. There is no anomaly, to say the least, in such a rule of reciprocity. Indeed, there are special reasons why this very result must have been thought of in the framing of the statute. If a new return was required, when was it to be due? The statute tells us (§§ 227a, 241a) that when a taxpayer makes his return on the basis of a fiscal year, the time for filing shall be the fifteenth day of the third month following the close of such year, which for these petitioners was the fifteenth of July. Thus the date fixed for filing was far in advance of the date when the statute was enacted. From this the inference is a fair one that returns already filed were continued in effect, being treated as if made under the new act, which thus adopted and renewed them. Otherwise the taxpayer was placed in default before the duty was imposed. Nor is there anything unworkable in thus applying the doctrine of relation to keep returns alive. To the extent that gross income or deductions were to be computed differently thereafter, the Commissioner could make the necessary adjustment in connection with his audit. Moreover by virtue of his general power to make " all needful rules and regulations " with the approval of the Secretary (§ 1303), he might require of taxpayers whatever supplementary information would be necessary to enable him to act correctly. This, as we have seen, he did, designating a new date selected by himself and wholly unrelated to the fiscal year covered. The validity of such a regulation will be assumed and indeed is not contested. None the less, the return exacted by the statute, the one that in the absence of fraud is to start the term of

limitation (§ 250d), is the return filed by the taxpayer at the close of the fiscal year, though supplementary information may modify or add to it. Cf. *Florsheim Bros. Drygoods Co., Ltd.* v. *United States,* 280 U. S. 453, 462.

A different conclusion would lead in practice to complications and injustice. Many taxpayers filing returns under the Act of 1918 were unaffected by the changes wrought by the Act of 1921. Their returns, if made over again, would have been an exact reproduction of those they had made already. A statute would have to be very plain to justify a holding in such circumstances that there was an obligation to report anew. Certainly the average man would be slow to suspect that he was subject to such a duty. If he looked into the Treasury Decisions, he would learn that the Commissioner agreed with him. In these he was told by the plainest implication that unless he had an additional tax to pay, his return would stand as filed, without supplement or correction. Now, the Commissioner of Internal Revenue is without dispensing power. If a return under the old act is not good under the new one, but, instead, is an utter nullity, he may not relieve the taxpayer of making a return over again. To this the Government assents, and on it builds the argument that the first returns are to be disregarded altogether, whether more is due or nothing. In that view, hundreds of taxpayers, perhaps thousands, though innocent of wilful wrong, have been deprived of the protection of any rule of limitation, not to speak of other penalties unwittingly incurred. A statute of uncertain meaning will not readily be made an instrument for so much of hardship and confusion.

Administrative construction, confirmed by acts of Congress, brings reinforcement to the argument. Reference has been made already to the Treasury Decisions issued in March, 1922. The pertinent administrative history,

however, does not begin at that point. It goes back to earlier statutes presenting a like problem. In the transit from the Revenue Act of 1917 to the Act of 1918 (40 Stat. 1057), there was the same gap to be filled, the same neccessity for determining the standing of returns made on a fiscal year basis before the new act became law. Treasury Decision 2797, issued by the Commissioner March 11, 1919, was designed to guide the taxpayer in that predicament. It is quoted in the margin.[3] It calls for an additional return when an additional tax is due, but not at other times. It treats the whole tax, computed under both returns, as made up of separate parts, one the part due under what is styled "the original return," and the other the additional part due "under the amended return." This regulation was in substance re-adopted in the regulations already referred to under the Act of 1921. There are verbal variations, but not of such a nature as to suggest a change of meaning. The like is true of a Treasury Decision issued under the Revenue Act of 1926 (44 Stat. 9; T. D. 3843). All these regulations have had the tacit assent and confirmation of the lawmakers. Successive revenue statutes have been enacted without substantial change in the applicable sections. Congress seemingly has been satisfied with the Decisions of the

---

[3] "If a corporation has before February 25, 1919, filed a return for a fiscal year ending in 1918 and paid or become liable for a tax computed under the revenue act of 1917, and is subject to additional tax for the same period under the revenue act of 1918, the return covering such additional tax shall be filed at the same time as returns of persons making returns for the calendar year 1918 are due under existing rulings, and payment of such additional tax is due in the same installments and at the same times as in the case of payments based on returns for the calendar year 1918. If no part of the tax for such fiscal year was due until after February 24, 1919, the whole amount of tax due, including tax due under the original return and additional tax due under the amended return will be payable in the same installments and at the same times as in the case of payments based on returns for the calendar year 1918."

Treasury and with the interpretation of its own meaning implicit in them. *National Lead Co.* v. *United States,* 252 U. S. 140, 146; *McCaughn* v. *Hershey Chocolate Co.,* 283 U. S. 488, 492, 493; *Costanzo* v. *Tillinghast,* 287 U. S. 341, 345; *Norwegian Nitrogen Co.* v. *United States,* 288 U. S. 294, 315.

From this administrative history the inference is compelling that a second return, reporting an additional tax, is an amendment or supplement to a return already upon the files, and being effective by relation does not toll a limitation which has once begun to run. *Florsheim Bros. Drygoods Co., Ltd.* v. *United States, supra.* Cf. *United States* v. *Memphis Cotton Oil Co.,* 288 U. S. 62, 67; *N. Y. Central & H. R. R. Co.* v. *Kinney,* 260 U. S. 340, 346. Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such (*Lucas* v. *Pilliod Lumber Co.,* 281 U. S. 245), and evinces an honest and genuine endeavor to satisfy the law. This is so though at the time of filing the omissions or inaccuracies are such as to make amendment necessary. Even more clearly is it so when the return is full and accurate in the beginning under the statutes then in force, but is made inaccurate or incomplete by supervening changes of the law, unforeseen and unforeseeable. Supplement and correction in such circumstances will not take from a taxpayer, free from personal fault, the protection of a term of limitation already running for his benefit. Cf. *Myles Salt Co., Ltd.* v. *Commissioner, supra,* at p. 233; *Valentine-Clark Co.* v. *Commissioner, supra,* at p. 349. At the very least the statutes are sufficiently ambiguous to be susceptible of that construction without strain upon their meaning. So in effect the Commissioner has construed them by relieving taxpayers of the duty of filing a new return except for additional taxes and by treating such new return as an

amendment or a supplement.  So this Court construes them now.

In the argument for the Government much is made of the point that in giving effect for any purpose to the original return we cut down the period available to the Bureau for audit and assessment.  The reduction, however, is not serious.  In the first place, it applies only to that part of the taxable year as to which the two statutes overlap.  In the second place, the return in its first form was subject to immediate audit in respect of everything embraced within it.  Indeed, at that time the examiners could not know whether a new statute would be passed before the end of the calendar year, or whether the changes would be great or small.  Whatever shortening of time there has been is limited to those matters as to which the statutes differ from each other.  Even for that purpose, however, the time available was ample.  Almost three years and eight months were left for carrying the audit to completion.  The curtailment is too slight, the inconvenience too nearly negligible, to affect the process of construction.

A middle ground has been suggested, a path of compromise between the position of the petitioners at one extreme and that of the Government at the other.  Some such compromise is indicated, it seems, in decisions of the Board of Tax Appeals, though the rulings of the Board in that respect are involved in some obscurity.  At all events, the suggestion is that the term of limitation shall run from the new return when it appears on the face of the original return that because of the changes in the law a tax will be due beyond the liability reported,[4] and that

---

[4] See, e. g., Isaac Goldmann Co. *v.* Commissioner, 17 B. T. A. 1103 (reversed, 60 App. D. C. 265; 51 F. (2d) 427); Myles Salt Co., Ltd. *v.* Commissioner, 18 B. T. A. 742, 744 (reversed, 49 F. (2d) 232); G. Corrado Coal & Coke Interests, Inc. *v.* Commissioner, 19 B. T. A. 691; Lorie *v.* Commissioner, 21 B. T. A. 612.

the limitation shall run from the original return when there is nothing on the face of that return to indicate that the liability reported is less than is owing.[5]  The statute supplies no basis for such a principle of division. An examiner needs more time for an audit when errors are latent, to be discovered only by digging into books and vouchers, than when errors are apparent upon a bare inspection of the record.  It would be a strange rule of limitation that would vary his opportunity inversely to his needs.

One other contention of the Government is stated merely to exclude it from the scope of our decision.  The Government makes the point that the petitioners' return, even if filed at the proper time, must be held to be a nullity for the reason that it commingles the income of the affiliated companies, parent and subsidiary, with that of another company, the A. S. Hopkins Company, previously dissolved.  No such point was considered by the court below, nor was it suggested either in the petition for certiorari or in any response thereto.  Review by this Court will be limited accordingly.  *Johnson* v. *Manhattan Ry. Co.,* 289 U. S. 479, 494; *Charles Warner Co.* v. *Independent Pier Co.,* 278 U. S. 85, 91.

The decrees should be reversed and the causes remanded for further proceedings in accordance with this opinion.

*Reversed.*

---

[5] See, e. g., Fred T. Ley & Co. *v.* Commissioner, 9 B. T. A. 749, 751; Palmetto Coal Co. *v.* Commissioner, 11 B. T. A. 154; Denholm & McKay Co. *v.* Commissioner, 15 B. T. A. 225.