FRANCISCO BALLESTER RIPOLL, Appellant, v. COURT OF TAX APPEALS, Respondent; RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Intervener.

No. 1300. Argued July 2, 1942.—Decided July 23, 1942.

750

 

*J. J. Ortiz Alibrán* for appellant. *George A. Malcolm, Attorney General, M. Rodríguez Ramos; Assistant Attorney General,* and *Eulogio Riera, Deputy Attorney General,* for intervener.

MR. JUSTICE SNYDER delivered the opinion of the court.

On March 15, 1941, Francisco Ballester Ripoll and his wife filed separate income tax returns for the year ending December 31, 1940. Their returns reflected a net income of $39,058.90, and they paid taxes totalling $908.78 thereon.

On August 18, 1941, the Treasurer sent the petitioner a communication entitled "Notice and Demand". This document was a printed form reading as follows:

"You are hereby notified that your income tax return No. [347], filed for the taxable year ended on [December 31, 1940], has been reliquidated by this Department in accordance with the provisions of Act No. 31, approved April 12, 1941, and Act No. 159, approved May 13, 1941, which amend with retroactive effect to January 1st, 1940, the Income Tax Act No. 74, of August 6, 1925, as it has been subsequently amended, considering the original net income reported in your aforesaid return, in the following manner:

"[Net income according to your return _____ $19,529.45
Net income according to return of your wife _____ 19,529.45
 _____
 $39,058.90
Less: Personal exemption _____ $2,000.00
 Credit for dependents _____ 1,200.00 3,200.00
 _____
Net income subject to normal tax _____ $35,858.90
Normal tax:
 8% on $35,858.90 _____ $2,868.71
Additional tax _____ 3,701.78
 _____
Total tax _____ $6,570.49
Less:
 Tax imposed by Rec. #770–771 ____ 908.78
 _____
 Balance to be paid _____ $5,661.71]

"If within TEN (10) DAYS from this date the amount of $[2,830.86] of the new tax due according to this computation, is not paid, interest at the rate of 1% per month from the date of this notice will be collected.

"The second installment must be paid on or before [September 15, 1941]."

The matter in brackets, applying to the particular case of the petitioner, had been inserted in the printed form by typewriter.

On August 21, 1941, counsel for the petitioner wrote the Treasurer requesting that he "annull the tax imposed" in this case. The Acting Assistant Treasurer replied by letter of September 10, 1941, reading in part as follows:

"In reply you are informed that the Notice and Demand made to your client on August 18, 1941, does not constitute a statutory deficiency inasmuch as the same is not a preventive assessment but the imposition of the tax computed at the rate provided by the act now in force.

"Nor is such notice and demand for payment an administrative decision of the Treasurer, which gives jurisdiction to the Court of Tax Appeals of Puerto Rico, for such action merely amounts to a ministerial act by the Treasurer in accordance with the law."

On October 1, 1941, the petitioner filed a complaint against the Treasurer in the Court of Tax Appeals. The Treasurer filed an answer on December 24, 1941, the case was heard on the merits on January 27, 1942, and submitted for decision by the Court of Tax Appeals. On May 27, 1942, the Court of Tax Appeals decided it was without jurisdiction to entertain the case, and ordered the Treasurer to collect the tax in question in accordance with that decision. We granted certiorari.

Although the Attorney General, representing the Treasurer, followed the customary practice of filing a formal and routine plea to the jurisdiction of the court, neither party argued this matter in the Court of Tax Appeals and the case was heard by the court on the merits and submitted for de-

cision. The court *motu proprio* concluded that it had no jurisdiction, on the ground that the case involved a deficiency, and that the taxpayer had failed to post the bond which is a jurisdictional requisite in such cases.

█ Under the Income Tax Act of 1924, as amended, the taxpayer normally makes his own return, computes his own tax, and pays it within the statutory period (§53). "As soon as practicable after the return is filed the Treasurer . . . examine(s) it and . . . determine(s) the correct amount of the tax" (§54). If the Treasurer disagrees with the taxpayer as to the amount, he notifies the taxpayer by registered mail of a deficiency, but does not actually assess the deficiency until the taxpayer has been given the opportunity to take certain steps to contest the same (§57(a)). However, if the Treasurer believes that the assessment or collection of a deficiency will be jeopardized by delay, he shall immediately assess said deficiency and make the notice and demand for the payment thereof. (Section 57(d); now §57(c), by virtue of amendment of §57 contained in §6 of Act No. 23, Laws of Puerto Rico, 1941, Special Session).

We now address ourselves to the facts of the instant case. The Treasurer, as we have seen, took the position in his "Notice and Demand" of August 18, 1941, that no deficiency was involved in this case. Consequently, he did not send the taxpayer the notice of deficiency by registered mail required by §57(a) in such cases. It would therefore seem obvious without further discussion that no deficiency is involved here, and that the jurisdictional requirement of §57(a) (as amended by §7 of Act No. 102, Laws of Puerto Rico, 1936; §5 of Act No. 159, Laws of Puerto Rico, 1941; and §6 of Act No. 23, Laws of Puerto Rico, 1941, Special Session) that a bond for 75 per cent of the tax be filed in order to entitle the taxpayer to the statutory review of the determination by the Treasurer of a deficiency could not possibly apply to this case.

■■ The Court of Tax Appeals nevertheless held that a deficiency did exist in this case, and that in view of the failure of the taxpayer to file the aforesaid bond, it had no jurisdiction to consider the case. While conceding that the Treasurer had not notified the taxpayer of a deficiency as required by §57(a), the court nevertheless concludes that the Treasurer had in this case made a jeopardy assessment under the then §57(d), which provides that when the Treasurer makes a jeopardy assessment, the notice to the taxpayer by registered mail and other requisites of §57(a) for deficiencies need not be complied with by the Treasurer.

The Court of Tax Appeals, in coming to this conclusion, asserts that it has no right to substitute its judgment as to whether a jeopardy assessment should be made for that of the Treasurer. The court quotes with approval from Hamel, Practice and Evidence Before the U. S. Board of Tax Appeals, page 77, to that effect, as follows:

"Jurisdiction to decide particular issues. a. General rule. Though in general the Board has jurisdiction to consider all matters necessary to the determination of the proper deficiency or overpayment, it will not pass upon questions which are considered to be matters of Bureau administration. Issues of this type are the acceptance or rejection of amended returns, the question whether an overpayment should be credited or refunded, and whether 'jeopardy' exists so as to warrant a jeopardy assessment."

The court is correct in its assertion that it cannot inquire into the action of the Treasurer in making a jeopardy assessment. But, by the same token, there is no authority or power in the court to hold that the Treasurer has, or should have, made a jeopardy assessment when he did not do so. The provision for jeopardy assessments obviously contemplates that it shall be utilized by the Treasurer in such emergency situations as the imminent flight of the taxpayer, disposition by him of his property, or the running of the statute of limitations. And here the Treasurer made no such findings. As we have already seen, far from proceeding by way of jeop-

ardy, the Treasurer advised the taxpayer that this was not even a deficiency, and that he would permit payment in installments. The Attorney General neither in his brief nor at the oral argument made any effort to sustain the position of the Court of Tax Appeals that the Treasurer had made a jeopardy assessment herein. The conclusion of the Court of Tax Appeals that this had been done was without basis, and must be discarded.

██ We are therefore forced back to the original question in this case—was the "Notice and Demand" of the Treasurer the determination of a deficiency pursuant to §57(a)? A deficiency is the amount by which the tax imposed by the Income Tax Act exceeds the amount shown as the tax by the taxpayer upon his return (§56(1)).

The situation here is unique. Our attention has not been called to any authorities squarely in point. The traditional deficiency comes into being, as already noted, by virtue of an examination of the taxpayer's return and a determination by the Treasurer that the taxpayer *at the time he made the return* owed an income tax larger, *under then existing law,* than he had reported and paid. See *Veeder* v. *Commissioner of Internal Revenue,* 36 F. (2d) 342, 343 (C.C.A., 7th Circ., 1929).

Certainly there was not, therefore, a deficiency here in the usual sense. The Treasurer has not questioned the correctness of the returns of the petitioner and his wife as of the date they were filed. The additional tax now claimed became due for the first time *after* these returns had been filed, by virtue of Acts Nos. 31 and 159, Laws of Puerto Rico, 1941, which provided in terms that their provisions should take effect retroactively as of January 1, 1940. The Treasurer himself in the "Notice and Demand" calls it a *new* tax, instead of a tax which the petitioner and his wife should have and did not pay at the time they made their returns on March 15, 1941.

The Attorney General, representing the Treasurer, seeks in his brief here to hold the petitioner to the allegation of his complaint in the Court of Tax Appeals that the tax in controversy involved a deficiency, and argues that the Court of Tax Appeals therefore properly ruled that it had no jurisdiction to proceed, in view of the lack of the bond required by §57 (a) for deficiency cases. But the petitioner points out that since this is not a jeopardy assessment, and since the Treasurer failed to conform to the statutory requisites of notice *et al.* provided for a deficiency, it cannot be considered as such. Paul and Mertens, Law of Federal Income Taxation, vol. 5, §§42.52, 42.53, 43.09; *Heinemann Chemical Co.* v. *Heiner,* 92 F. (2d) 344 (C.C.A., 3rd Circ., 1937). And it is abundantly clear that the Treasurer resisted all the efforts of the taxpayer to have the controversy disposed of in the manner provided by statute for deficiencies. To follow the arguments of the Treasurer and the taxpayer to the logical conclusion of each of them therefore serves only to produce a stalemate.

We therefore turn to the possible solution that an "administrative decision" had been made by the Treasurer in this case. The Treasurer in his letter of September 10, 1941, asserted that in sending out his "Notice and Demand" he had performed only a ministerial act. This position seems at first blush to be reasonable. For example, if the Treasurer had failed to send any notice whatsoever to such taxpayers, it cannot be doubted that their liability for the taxes in question would have remained unaffected. This seems particularly true in view of the apparent lack of a requirement, by statute or regulation, that a new or supplemental return be made in connection with the additional tax retroactively imposed.

Yet this result should if possible be avoided, as to follow it to its logical conclusion would run directly contrary to a long established policy laid down by the Legislature. This

policy is expressed in the sweeping statutory inhibition against the issuance of injunctions to restrain the collection of taxes or the enforcement of taxing statutes. (See *Fernández* v. *Buscaglia, Treas., ante,* p. 582, decided June 18, 1942; *Smallwood* v. *Gallardo,* 275 U. S. 56.) This statute is based on the sound public policy that cutting off the flow of public revenue results in paralizing governmental operations. Taxpayers must, unless a statute otherwise provides, pay first and litigate afterwards. It is only when *no other judicial* remedy is available to a taxpayer for review of executive determinations of his tax liability, that the courts may restrain executive action to collect such taxes (See *Fernández* v. *Buscaglia, Treas., supra*).

To hold, as the Treasurer asserted, that the taxes in controversy herein were due neither by virtue of a deficiency nor by virtue of an administrative decision by him and that the Court of Tax Appeals therefore lacked jurisdiction, would amply justify the taxpayer in resorting to injunction on the ground that no other remedy existed. But this court is unwilling to subvert the legislative policy against injunctive relief in tax cases, if that result can be avoided. The obvious conclusion is at hand. If the "Notice and Demand" of August 18, 1941, calling on the petitioner to pay a *new* tax of $5,661.71, is an "administrative decision" within the meaning of §4 of Act No. 172, Laws of Puerto Rico, 1941, the Court of Tax Appeals under that section has jurisdiction in this case, the taxpayer has an adequate statutory remedy, and injunction, in the ordinary case, would therefore not lie.

This is not a wholly illogical deduction from the facts as the record discloses them. The Treasurer did undertake to do something. It may be argued that his action amounted merely to a mathematical calculation. But the net result was that he was advising the taxpayer of his conclusion that Acts Nos. 31 and 159 applied to him in several detailed respects,

giving the exact amount due, and ruling that the retroactive features thereof were valid and apply to him in a certain detailed fashion.

As already noted, no authorities have been called to our attention in which this unique situation has ever been considered. The closest case we have found in *Zellerbach* v. *Helvering*, 293 U. S. 172, where the issue was whether the period for the statute of limitations within which the Commissioner of Internal Revenue might make a deficiency assessment was calculated from the date the return was originally filed, in spite of the fact that the statute had been amended, as here, retroactively increasing taxes in certain respects.

In the *Zellerbach* case the situation was somewhat different in that taxpayers there were required to "file a new or supplemental return covering such additional tax". (page 174). Nevertheless, the holding and language in the *Zellerbach* case do point up the fact that a retroactive tax is an additional tax by operation of law plus a determination by the Treasurer as to the exact application of its numerous provisions and the exact amount due by this particular taxpayer. See comment on *Zellerbach* case in 48 Harv. L. R. 858.

To hold that the action of the Treasurer in determining the amount of the tax herein constitutes an "administrative decision" by him does no violence to Act No. 172. Indeed, it carries out the general purpose of the statute to canalize all tax cases of certain types into the Court of Tax Appeals. It creates no hardship for either of the parties. And most important, calling the Treasurer's action an administrative decision and thereby providing for judicial, or quasi-judicial, review thereof by the Court of Tax Appeals under §4 of Act No. 172, enables us to enforce the long settled and wise policy of the Legislature to avoid the injunctive relief to which the taxpayer under these circumstances would be entitled if we did not come to this conclusion.

Moreover, this result would seem particularly desirable in view of the fact that out of it, together with our opinion in *Mayagüez Sugar Company, Inc.* v. *Court of Tax Appeals, ante,* (p. 737) would come (*a*) freedom from impairment of public revenue by injunction and (*b*) the integration of all remedies for review by this court of decisions of the Court of Tax Appeals under §5 of Act No. 172, providing a special form of certiorari for such review.

In holding that the action of the Treasurer in sending the petitioner the "Notice and Demand" of August 18, 1941, amounted to an administrative decision, we are perhaps allowing some play at the joints in the application of Act No. 172. But courts do not operate in a vacuum. The practical results of their decisions cannot, and should not, be rejected by them. "I recognize without hesitation that judges do and must legislate, but they can do so only interstitially; they are confined from molar to molecular motions." (Mr. Justice Holmes dissenting in *Southern Pacific Company* v. *Jensen,* 244 U. S. 205, 221.) If it should be felt that in our ruling on this question we are following this comparatively mild mandate of Mr. Justice Holmes, the situation eminently justified our action.

We are constrained to add that both the holding and reasoning of this case on this particular point are confined to the peculiar facts and questions of law confronting us here. We are not to be understood as holding that *all* decisions of the Treasurer are subject to review by the Court of Tax Appeals. To the extent that the Income Tax Act and other statutes give the Treasurer discretion to take certain action, such as making jeopardy assessments, as in the instant case, when to make final determinations (§73), when to remit (§75), etc., we find no intention expressed by the Legislature in Act No. 172 creating the Court of Tax Appeals to substitute the discretion of the court for that of the Treasurer.

■■ There remain three procedural questions raised by the Attorney General. He first argues that as this case involves a deficiency, the taxpayer should have proceeded in this court by appeal rather than by certiorari. We have held that even in deficiency cases certiorari, pursuant to § 5 of Act No. 172, Laws of Puerto Rico, 1941, is the proper remedy for review by us of decisions of the Court of Tax Appeals (*Mayagüez Sugar Co., Inc.* v. *Court of Tax Appeals, etc., ante,* p. 737, decided July 23, 1942). In addition, as we have already concluded that the matter in controversy herein involved a "decision(s) of the Treasurer of Puerto Rico .... affect(ing) the payment of .... income taxes .... " within the purview of § 4 of Act No. 172, the special form of certiorari provided in §5 thereof for review by this court of such cases was clearly appropriate to bring this case here.

■■ The Attorney General next contends that the decision of the Court of Tax Appeals in this case was not a final decision, and that the appeal is therefore premature. His position is that the taxpayer could have moved to re-open the case in order (a) to post the required bond and (b) to file an amended complaint alleging that he had done so. He argues that if the taxpayer was unwilling to follow this course, he should in that event have asked for a final and definite "decision" of the Court of Tax Appeals enabling him to obtain a review thereof in this court. The Attorney General invokes the analogy of an order of a district court sustaining a demurrer which is ordinarily not appealable. Under those circumstances the aggrieved party must obtain the entry of a final judgment from which he may appeal.

It is true that the court said in the closing paragraph of its "decision" that if the taxpayer posted the bond required by §62 a of the Income Tax Act, the court would re-open the case in order to consider it on the merits. But that was far from holding that the decision of the court was not final. On

the contrary, the court undertook on the same date to issue an "order" to the Treasurer reading as follows:

"There is enclosed a certified copy of the decision rendered in the above-entitled case, by which the imposition of the tax made by the Treasurer of Puerto Rico is not altered in any way. Therefore, it is ordered that you proceed to the collection of the same in accordance with the terms of said decision."

It is difficult to see how the Court of Tax Appeals could have made a more definite and conclusive ruling. Its decision, if not modified or reversed, would certainly result in the collection of the tax. Even assuming that the taxpayer might have moved to re-open the case to obtain modification thereof, he was not compelled to do so. And the analogy drawn by the Attorney General from suits at law requiring that a judgment be entered after a district court has signed an order sustaining a demurrer to enable appeal therefrom, does not apply, as the Act creating the Court of Tax Appeals makes no such distinction. Section 5 thereof provides for review by this court of its "decisions". To require the taxpayer to ask the court to enter another final "decision" based on a decision which has already been entered, would be to engage in pointless formalities. Certainly, we are not prepared to say that under the circumstances of this case the taxpayer was thereby completely deprived of his right of review by this court.

The Attorney General finally argues that the appeal must be dismissed as the taxpayer has voluntarily paid the taxes in question. To support this contention, the Attorney General cites *Agudo* v. *Sancho*, 89 F. (2d) 481, 484; *Jiménez* v. *Domench*, 80 F. (2d) 767, 778; *Bonet* v. *Yabucoa Sugar Co.*, 306 U. S. 505, 508; and *Oliver* v. *Domenech*, 58 P.R.R. 65, 70, 71. Indeed, the Attorney General asserts that even the Court of Tax Appeals no longer has jurisdiction in this case by virtue of the alleged voluntary payment, citing the *Yabucoa* case. The Attorney General's reasoning is that

the statutes provide that after final decision by the Court of Tax Appeals, the taxpayer, in order to obtain a review of such a decision by this court, must pay his tax under protest. The Attorney General does not question that the taxpayer here, subsequent to the decision rendered by the Court of Tax Appeals, paid the taxes in question under protest. The Attorney General, however, states that since the decision in question was not a final one, the taxpayer therefore paid the tax prior to the decision contemplated by §5 of Act No. 172. The Attorney General therefore concludes that the payment must be treated as voluntary, with all the consequences resulting from such action. This argument is, of course, based on the premise that the decision of the Court of Tax Appeals in this case was not final. As we have already rejected that premise, we conclude that the payment was properly made under protest after decision of the Court of Tax Appeals, and that we therefore have jurisdiction to consider this case.

The petitioner has urged us to dispose of the case on the merits, including the alleged invalidity of various provisions of Acts Nos. 31 and 159, Laws of Puerto Rico, 1941. The record shows that there was no serious dispute between the parties on the facts, and therefore it perhaps would be possible to take such action. However, in view of the fact that the Court of Tax Appeals, having refused to take jurisdiction, never passed on the questions of fact and of law, we feel that, under the circumstances of this particular case, it would be desirable for us to have the benefit of their views before disposing of the numerous questions raised on the merits in this case.

The decision of the Court of Tax Appeals will be reversed and the case remanded to that Court for further proceedings not inconsistent with this opinion.

Mr. Justice Travieso did not participate herein.