PHILIP H. FRIEDMAN AND ANNA FRIEDMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7359-90.    Filed November 26, 1991.

*Jay J. Freireich,* for the petitioners.

*Susan G. Lewis* and *Guy G. Lavignera,* for the respondent. ·

## OPINION

GERBER, *Judge:* Petitioners moved for partial summary judgment on the question of whether the facts here meet a specific requirement of section 6013(e).[1] The statute affords innocent spouse relief where there is a substantial understatement of tax attributable to grossly erroneous items of one spouse "on such return." Sec. 6013(e)(1)(B). More specifically, the issue concerns whether innocent spouse relief is available only where the "grossly erroneous items" are reported on the jointly filed return, as respondent argues, or whether the relief is available where the "grossly erroneous items" are attributable to a jointly filed Form 1045 (Application for Tentative Refund). The parties urge the resolution of this issue prior to trial to determine whether it will be necessary to address petitioner wife's innocent spouse arguments under section 6013(e). If we find that petitioner wife has not met the requirement of section 6013(e) in question, then she will not qualify for relief as an innocent spouse.

We find that the use of summary judgment is appropriate in the setting of this case. See Rule 121(b). The burden of

---

[1]The parties addressed the issue in a more limited fashion as one concerning whether the Form 1045 is a "return" within the meaning of sec. 6013(e).

Section references are to the Internal Revenue Code of 1954 as in effect and amended for the taxable years under consideration. Rule references are to this Court's Rules of Practice and Procedure.

proof is upon petitioners with respect to the issue under consideration. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111 (1933).

## Background

The facts have been fully stipulated and there is no disagreement concerning the facts necessary to address this controversy. Petitioners timely executed and filed joint Federal income tax returns for their 1981, 1982, and 1983 taxable years. On each return, petitioners reported the filing status "Married Filing Joint Return." Although petitioners' 1981 and 1982 returns had underpayments as filed, respondent did not question the items reported.

Petitioners, on their 1983 return, reported a $900,525 depreciation loss concerning a computer equipment leasing transaction. After applying the loss against items for 1983, petitioners reflected an unused net operating loss in the amount of $836,205. On February 27, 1984, respondent received a Form 1045 seeking to carry back the 1983 net operating loss deduction to petitioners' 1981 and 1982 returns. The Form 1045 contained the amount to be carried back from 1983 and certain computations regarding the 1981 and 1982 taxable years. Respondent, on March 26, 1984, allowed petitioners' claim by crediting their unpaid 1981 and 1982 liabilities resulting from their timely filed but underpaid 1981 and 1982 returns.

Respondent, on January 23, 1990, determined deficiencies in petitioners' 1981 through 1985 income tax liabilities. The 1983, 1984, and 1985 deficiencies were substantially attributable to disallowance of petitioners' claimed losses from the computer leasing transaction. The 1981 and 1982 years were included in the notice of deficiency solely due to the disallowance of the carryback loss deduction and respondent's prior tentative allowance of credits for unpaid liabilities for 1981 and 1982.

Petitioners alleged that respondent erred in disallowing their computer leasing losses, and petitioner wife alleged that she was an innocent spouse. Subsequently, petitioner husband conceded all adjustments and deficiencies determined by respondent, including additions to tax under

sections 6653(a)(1) and (2) and 6661, and increased interest under section 6621(c).

## Discussion

With this background, respondent argues that petitioners' 1981 and 1982 income tax returns were accepted as filed by respondent, and accordingly no substantial understatement exists with respect to them. In essence, respondent is attempting to make a dichotomy between the returns and ancillary documents by arguing that the Form 1045 does not constitute a return within the meaning of section 6013(e). Conversely, petitioners argue that the Form 1045 is a return within the meaning of section 6013(e). Petitioners also argue that the Form 1045 is no different from a Form 1040X (amended or amendment to a Federal income tax return).

The operative language of section 6013(e) (which concerns the relief from liability of an innocent spouse) contains the following pertinent language:

(1) IN GENERAL.—Under regulations prescribed by the Secretary, if—
   (A) *a joint return* has been made under this section for a taxable year,
   (B) *on such return* there is a substantial under-statement of tax attributable to grossly erroneous items of one spouse,
[Emphasis supplied.]

The statutory requirement that any return be jointly executed or filed is not troublesome here because all documents under consideration were signed by both petitioners. The troublesome aspect of this controversy involves the language "on such return there is a substantial under-statement of tax attributable to grossly erroneous items of one spouse." Respondent interprets the quoted language as referring to petitioners' 1981 and 1982 joint income tax returns. Respondent specifically excludes the Form 1045 from his interpretation of the quoted language. Respondent argues that a Form 1045 is not a tax return, but it is "merely an *application* for a tentative refund."

A taxpayer is precluded from filing two returns for one taxable year.[2] Moreover, every document which a taxpayer

---

[2]See discussion in M. Saltzman, IRS Practice and Procedure, par. 4.02[3] (2d ed. 1991).

files containing computations and tax information is not a return. The question of whether a particular document is a return has been considered in various contexts. *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934); *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453 (1930); *Beard v. Commissioner*, 82 T.C. 766, 777-778 (1984), affd. 793 F.2d 139 (6th Cir. 1986). In many of those cases, the question of whether a document is a return is essential in the determination of whether an addition to tax for late filing is applicable or whether the period of limitations on assessment or collection has begun. If, for example, a taxpayer files an amended return within the time prescribed for filing the original return, the amended return is considered to be the return for purposes of the period of limitations on assessment. See Rev. Rul. 83-36, 1983-1 C.B. 358. On the other hand, when an amended return is filed after the due date, the amended return constitutes a supplement or amendment to the original return. See *Zellerbach Paper Co. v. Helvering, supra.*

In the setting of this case, petitioners did not intend that the Form 1045 constitute a return for 1981, 1982, or 1983. Petitioners had already timely filed joint returns for each of the subject years. Rather, petitioners intended to modify their 1981 and 1982 returns by seeking the carryback of the net operating loss deduction from 1983 and reducing the amount of tax liability. Although the Form 1045, standing alone, might not be a return, it was intended to modify and, in that regard, did become an intrinsic part of petitioners' 1981 and 1982 returns. We think that relationship, resulting from the merger of the jointly executed Form 1045 and the 1981 and 1982 joint returns, satisfies the "on such return" language of section 6013(e)(1)(B). Any other interpretation would place "innocent spouse cases" in limbo where the erroneous item was generated by means of a document other than the initial return filed by the taxpayers.

Petitioners argue and we note that there is no definition of a return in section 6013 or the regulation thereunder, but the term "return" is addressed in connection with section 6103 (involving confidentiality and disclosure of returns and return information). "Return" is defined in section 6103(b)(1), as follows:

(1) RETURN.—The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

The definition of "return" for purposes of section 6103 supports petitioners' broader reading of the term. The inclusion of amendments and supplements, which would include amended returns and documents which supplement and modify the return originally filed, is also appropriate for the purposes of deciding whether the "on such return" requirement is satisfied.[3]

By way of analogy, we have held that additions to tax apply to taxable years which predate the effective date of such additions where taxpayers filed claims for refunds for such years pertaining to taxable years occurring after the effective date. See *Nielsen v. Commissioner*, 87 T.C. 779 (1986). In that case, the taxpayers filed Forms 1040X (Amended U.S. Individual Income Tax Returns) to claim refunds due to the carryback of investment tax credits generated by overvaluation of assets. The overvaluations occurred in years subsequent to the effective date for the section 6659 addition to tax for valuation overstatements (which was effective for returns filed after December 31, 1981).

We reasoned in *Nielsen* that—

It is inconceivable to us, however, that Congress intended to leave a gap for those who would place a valuation overstatement on a return for a year after the effective date of section 6659, carry back the claimed benefit of the overstatement to prior years, and obtain a refund of taxes for the prior years free of the risk of the sanction obviously intended to deter such overstatements. [*Nielsen v. Commissioner*, 87 T.C. at 783.[4]]

That same reasoning is apropos here. It would be an anomaly to deny innocent spouse relief to taxpayers where the erroneous item was associated with the return by means

---

[3]We in no way intend to extend our reasoning to other possible applications of the use of the term "return."

[4]See also *Herman Bennett Co. v. Commissioner*, 65 T.C. 506 (1975), where the period for assessment was held to be open regarding a year to which an investment credit was carried because the claim emanated from an open year. The reasoning in that case is also analogous and was relied upon in *Nielsen v. Commissioner*, 87 T.C. 779 (1986).

of a Form 1045 and grant it where the same erroneous item was on the return document. We refuse to interpret the language in question as requiring the erroneous item to physically be on the return. It is inconceivable that returns that are amended by means of another document, whether the amending document is denominated as a return or not, should not qualify.[5] The proper test and our understanding of the intent of the questioned section 6013(e)(1)(B) language is to consider the return and all pertinent documents in connection therewith that gave rise to the "erroneous item."

In the same vein, petitioners' 1983 joint return contained the questioned item from which the net operating loss deduction had sprung. One might also reasonably argue that the entry on the 1983 return meets the "on such return" requirement because that return was the one which actually generated the loss, refund, and eventual deficiency determination by respondent.

Moreover, incongruity and a less uniform application of the innocent spouse provisions would result if taxpayers were to be treated differently because of a technical difference in the type of document involved. Here, respondent has determined additions to tax for negligence for the 1981 and 1982 years based upon the claim made vis-à-vis the Form 1045. Any 1981 or 1982 income tax liability and additions to tax should not be handled differently from those for 1983 in the setting of this case.

Our focus in this case is whether petitioner wife should be afforded relief from tax liability because she is an innocent spouse within the meaning of section 6013(e). Respondent's reading of section 6013(e) vitiates the congressional intent. Additionally, since initial enactment, the innocent spouse provisions have been liberalized rather than restricted, a factor which also does not favor respondent's limiting interpretation. See amendments to sections 66 and 6013, Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98

---

[5]Respondent also argues that an amended return may not be a return within the meaning of sec. 6013(e). Respondent, on brief, states that "there is no statutory provision authorizing the filing of an amended return, and according to the United States Supreme Court an amended return is a 'creature of administrative origin and grace.' *Badaracco v. Commissioner of Internal Revenue,* 464 U.S. 386 at 394 (1984)." Respondent goes on to explain that he has discretion to accept an amended return after the original return was due. Taken as a whole, respondent's argument would place him in the position of deciding who would be entitled to relief under his limited reading of sec. 6013(e).

Stat. 801-803. We therefore hold that petitioner wife has met the "on such return" requirement of section 6013(e)(1)(B). The remaining elements required under section 6013(e) must now be considered by the parties and resolved by agreement or further opinion of this Court.

To reflect the foregoing,

*An appropriate order will be issued.*