EASTERBROOK, Circuit Judge,
dissenting.
My colleagues show convincingly that the absence of a statutory definition of the word “return” in tax law leaves the judiciary with discretion to vary the definition according to both economic and legal context. Compare Badaracco v. CIR, 464 U.S. 386, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984), with Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934). I also agree with their (implicit) conclusion that there is no good reason for a bankruptcy-specific definition of the term. Language newly added to § 523(a) provides: “[f]or purposes of this subsection, the term ‘return’ means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements).” 11 U.S.C. § 523(a), as amended by § 714 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 119 Stat. 23, 128-29 (Apr. 20, 2005). Use of non-bankruptcy law to flesh out terms not defined in the Bankruptcy Code is the norm. See Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Finally, I agree with the majority that the two-year rule in § 523 applies only to documents deemed “returns” under nonbankruptcy law; that a given document was filed more than two years before the bankruptcy began does not demonstrate that it is a tax “return.”
Application of these principles to Payne is another matter. The majority writes that a document “filed after the [tax] authorities have borne [the] burden [of calculating the amount due] does not serve the purpose of the filing requirement.” I disagree with this view — and so does the Internal Revenue Service. Any taxpayer who wants to propose a compromise of his tax liabilities must file a return, even if the Service already has gone to the trouble of calculating and assessing the tax without his help. 26 C.F.R. § 301.7122-l(d), implemented by Form 656.
This regulation did not become effective until 2002, after Payne was in bankruptcy, but it tells us that the Treasury Department does think that a taxpayer’s post-assessment statement of all income and deductions is useful. Such a document therefore must be a “return” under my colleagues’ definition. (In this court the Department of Justice, representing the United States, has asserted that a post-assessment filing is useless without so much as acknowledging the Treasury regulation.) After the 2005 legislation, an untimely return can not lead to a discharge — recall that the new language refers to “applicable nonbankruptcy law (including applicable filing requirements).” But to say that a document came too late to allow a discharge in cases commenced after October 2005 (when the amendment took effect) is not to say that it wasn’t a “return” in 1992, when Payne filed it, or for that matter today.
Post-assessment returns can be useful, whether or not the agency insists on them, because otherwise it must make estimates. Truthful returns, no matter how late, replace estimates with facts. A taxpayer who provides all of the information required by the tax laws may show that his *1061 income was more (or less) than the Service believed, leading to a more accurate assessment. Securing this information from the person with the best knowledge about his income and deductable expenses is why tax law requires returns in the first place. Better late than never. The taxpayer then will be unable to deny that he had income; the agency will be able to levy on his assets without protest that it made up the numbers. A belated return will close off some avenues, narrow the dispute that remains should litigation ensue, and — well, it will facilitate compromise. When both sides have the same information, settlement is easier to achieve. That’s why the 2002 regulation requires the filing. And for the very reasons that filing is today obligatory if the taxpayer wants to pursue compromise, it is inappropriate for a court to proclaim that the document is worthless and hence not a “return.”
One could say that a given document is not a “return” for some purposes even though the IRS uses that label for others, such as talking compromise, but that would slice things too finely. Suppose Payne had sent the same document, with the same description of his 1986 income and deductable expenses, in 1989, two years after it was due but one year before the IRS made its independent calculation. Would it have been a “return” if unaccompanied by payment? What if Payne had filed it on time in 1987 but paid nothing and hid or squandered assets in an attempt to defeat collection? That would have been culpable — but not because Payne failed to make a “return.”
A good part of my colleagues’ discussion rests on a view that an honest and reasonable effort to satisfy the law (the fourth element of Zellerbach) is one that leads to collection, and they fault Payne’s 1992 filing because no money was forthcoming. But this conflates disclosure with substance. The portion of the Internal Revenue Code that must be satisfied honestly and reasonably, if a document is to be called a return, is the statute requiring revelation of financial information, not the statute requiring payment. A cashier’s check for all taxes due is not a “return,” and its absence does not prevent a full and accurate disclosure of income and deductions from being a “return.” Similarly Payne’s 1992 filing, if not a “return” based on its contents, would not have become one if the envelope had included a check for $5,000.
The majority’s assertion that a document that contains all information required by tax law but rests in Arlington National Cemetery is not a “return” illustrates the difference in our approaches. The problem with mailing a document to the dead letter office rather than the IRS is that it has not been filed; the document remains whatever it was before the envelope was addressed. A bearer bond in the purser’s safe of the Titanic is still a bearer bond, though the coupons can’t be clipped. It makes perfect sense to say: “Perkins completed his tax return but forgot to file it.” And if Perkins posts it a year late, the thing being filed is a “return.” If it is a return in the IRS’s files, it was a return while in Perkins’s desk drawer. Judges should not fiddle with the definition of “return” so that one word covers all important steps in a system of self-assessment. Timely filing and satisfaction of one’s financial obligations are requirements distinct from the definition of a “return”; the majority, however, rolls them all together.
My colleagues have a subsidiary theme: that Payne’s “purpose in filing the belated return was to satisfy a condition precedent to obtaining a discharge [in bankruptcy], rather than to pay any of the taxes he owed.” This is the basis for their assertion that Payne “was angling for a dis *1062 charge.” Yet Payne’s purpose is a question of fact, and as far as I can see the United States does not even contend that Payne had such a purpose. (Nor, for that matter, does the United States contend that it would have been able to collect more had Payne made a return earlier; the majority’s speculation that it “might have been able” to do so, to the extent it implies more than the truism that anything “might” happen, is unsupported by the record.) I rather doubt that Payne had such a motive, because he did not enter bankruptcy until five years after he provided the Service with a return, and the IRS could have levied on his assets in the interim. Had the IRS begun to collect, and Payne responded by declaring bankruptcy, then § 523(a)(l)(B)(ii) would have foreclosed a discharge. Because the IRS had the means to prevent the tax debt’s forgiveness, Payne must have had some other goal. At all events, identification of Payne’s mental state is for a trier of fact, not an appellate court.
Motive may affect the consequences of a return, but not the definition. Section 523(a)(1)(C) provides that a discharge may not be granted concerning any taxes “with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat tax law.” If employment of a document to avoid paying taxes renders that document a non-return, then § 523(a)(1)(C) serves no function, for it supposes that a “return” has been filed (else § 523(a)(1)(B)® would foreclose discharge). If a document designed to game the system is not a “return” in the first place, then no court ever would get to § 523(a)(1)(C). Instead a court should ask the statutory question: whether a person “willfully attempted ... to evade or defeat” the tax.
But we can’t do that now, because the bankruptcy judge did not make (and was not asked to make) a finding on that subject. The United States argued for a per se rule: no document filed after an assessment can be a “return,” no matter the taxpayer’s motive. The IRS is stuck with that strategy; a court of appeals should not bail it out by attributing to the taxpayer a motive that has never been proposed before and with respect to which he has had no chance to defend himself, and then reading this motive back into the definition of a “return” rather than working it out through § 523(a)(1)(C).
The upshot of my colleagues’ approach is that a “bad” motive precludes a discharge, where “bad” is something short of a willful attempt to evade or defeat taxes- — and where motive will be imputed on appeal rather than determined at trial. That both denies taxpayers an opportunity for a hearing and contravenes the statute. Section 523(a)(1)(C) does not say that “willful tax evasion precludes discharge, and any other purpose may do so too if the judge thinks the taxpayer crafty.” We should not overlay open-ended discretion on a concrete text. See, e.g., Lamie v. United States Trustee, 540 U.S. 526, 542, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004); Dodd v. United States, •— U.S.-, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005).
The document that Payne filed is a tax return because it contains all of the required information and may have helped the agency, as the 2002 regulation demonstrates. Payne filed this return more than two years before his bankruptcy commenced, so § 523(a)(1)(B)(ii) makes these taxes eligible for discharge. The United States has not argued — and we cannot properly declare sua sponte — that Payne has willfully attempted to defeat or evade any tax, so § 523(a)(1)(C) does not foreclose a discharge. The judgment discharging this debt therefore should be affirmed, no matter what we think of Payne’s care, ethics, or strategy. There is *1063 no general equitable override to the Bankruptcy Code — as the IRS is quick to observe when a judge might be tempted to do the taxpayer a favor. See United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996); United States v. Noland, 517 U.S. 535, 539, 543, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996); cf. Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). That principle works both ways.