T.C. Memo. 1996-327

UNITED STATES TAX COURT

PHILIP H. FRIEDMAN AND ANNA FRIEDMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 7359-90.                           Filed July 17, 1996.

<u>Jay J. Freireich</u>, for petitioners.

<u>Susan G. Lewis</u>, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

GERBER, <u>Judge</u>:  This case has been the subject of four prior
opinions of this Court,[1] the last of which held that Anna

---

[*] This opinion supplements a previously released opinion:
<u>Friedman v. Commissioner</u>, T.C. Memo. 1995-576.

[1] <u>Friedman v. Commissioner</u>, 97 T.C. 606 (1991), concerning
whether "grossly erroneous items", within the meaning of sec.
6013(e)(1)(B), could have been contained on a refund claim, Form
(continued...)

Friedman (petitioner) was an innocent spouse within the meaning of section 6013(e).[2] The parties' current controversy involves their conflicting Rule 155 tax computations.

Initially, we found that petitioner was not entitled to innocent spouse relief with respect to two items. Concerning the capital loss carryover, we found it was not a grossly erroneous item and that it did not meet the section 6013(e) requirements. The U.S. Court of Appeals for the Second Circuit affirmed that holding. Regarding losses from a computer leasing transaction, we found the deductions of those losses to be grossly erroneous items. However, we also found that petitioner failed to meet the requirement that she did not know, or have reason to know, that the deductions would give rise to substantial understatements when she signed the returns. Sec. 6013(e)(1)(C). The Court of Appeals reversed our finding on whether petitioner knew or had

[1](...continued)
1045, rather than on the Form 1040; Friedman v. Commissioner, T.C. Memo. 1992-89, concerning whether the testimony of an expert witness could be offered to show whether one of petitioners was a truthful witness; Friedman v. Commissioner, T.C. Memo. 1993-549, affd. in part, revd. and remanded in part 53 F.3d 523 (2d Cir. 1995), which concerned whether Anna Friedman was an innocent spouse within the meaning of sec. 6013(e); and Friedman v. Commissioner, T.C. Memo. 1995-576, where we held that Anna Friedman was an innocent spouse with respect to a grossly erroneous item in accord with the judgment and remand of the Court of Appeals and made findings concerning whether it was equitable to hold her liable.

[2] All section references are to the Internal Revenue Code in effect for the taxable period under consideration, and all Rule references are to this Court's Rules of Practice and Procedure, unless otherwise indicated.

reason to know and remanded the matter for our consideration of whether it would be equitable to hold her liable with respect to the grossly erroneous leasing transaction deductions. <u>Friedman v. Commissioner</u>, 53 F.3d 523 (2d Cir. 1995), affg. in part and revg. and remanding in part T.C. Memo. 1993-549.

This case involves 5 taxable years, and the losses claimed for the leasing transaction occur in all years, whereas the capital loss item occurs in only one year, 1983. The parties' computations agree with respect to the 1981, 1982, 1984, and 1985 tax years; i.e., petitioner would be relieved of income tax liability and all additions to tax because the leasing loss was the sole adjustment. With respect to 1983, petitioner reaches the same result as in the other 4 years (no liability), and respondent computes a $53,307.36 income tax liability and additions to tax in the amounts of $47,640.23[3] and $13,326.84 under sections 6653(a) and 6661, respectively. This opinion addresses the parties' differing approaches to the Rule 155 computation.

---

[3] For 1983, the sec. 6653(a)(1) addition to tax set forth in the notice of deficiency was $5,982.24, without considering sec. 6653(a)(2), which provided for 50 percent of the interest due on the underpayment. At the time of assessment (Mar. 28, 1994), following the entry of decision based on T.C. Memo. 1993-549, the addition to tax had increased to $106,925.26, including the 50-percent interest addition. After proposed abatement for the portion not attributable to the capital loss, the sec. 6653(a)(1) and (2) addition amounts to $47,640.23.

By way of background, petitioners claimed but, in substantial part, did not use a $327,600 net short-term capital loss on their 1980 joint income tax return. Accordingly, petitioners claimed a $322,340 short-term capital loss carryover from the 1980 tax year on their 1983 tax return. Respondent, in the statutory notice of deficiency for 1983, allowed $55,803 of this loss carryover. The balance of the loss was allowed for the 1980 taxable year pursuant to an audit examination of the 1980 tax year. In Friedman v. Commissioner, T.C. Memo. 1993-549, we held:

> With respect to the capital loss carryover, at the time petitioners filed their 1983 return, the 1980 return had not been audited. Therefore, when the 1983 return was filed with the capital loss carryover, petitioners did not know that the carryover duplicated losses [subsequently] allowed in 1980. The later disallowance was purely mechanical and a natural result of an adjustment to a prior year's return. The deduction was not frivolous or fraudulent. Therefore, the deduction had a basis in fact or law and the deduction is not grossly erroneous.

Under Rule 155, parties are required to submit "computations pursuant to the Court's determination of the issues, showing the correct amount of the deficiency * * * to be entered as the decision." Parties are not permitted to raise new issues or matters in connection with the Rule 155 computations. Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308 (1932). The starting point for the computation is the statutory notice of deficiency from which the parties compute the redetermined deficiency based

upon matters agreed by the parties or ruled upon by the Court. Home Group, Inc. v. Commissioner, 91 T.C. 265, 269 (1988), affd. 875 F.2d 377 (2d Cir. 1989); Whitham v. Commissioner, a Memorandum Opinion of this Court dated Jan. 30, 1953.

The starting point for each party's computation of the 1983 tax liability here is the $178,782 taxable income per the notice of deficiency. Petitioner then proceeds to deduct the $900,525 loss attributable to the grossly erroneous item, which results in "negative" taxable income of $729,590[4] after considering the income per the notice of deficiency. Petitioner contends that the negative taxable income obviates the possibility of the capital loss item causing any taxable income.

Respondent computes her 1983 proposed tax deficiency for petitioner in accord with the following pertinent instructions in subsection 45(11)(20) (Guidelines for Applying "Innocent Spouse" Provisions), 4 Examination, Internal Revenue Manual (CCH):

> (7) * * * If it is proposed to hold both spouses liable, but not to the same extent, in respect of the total deficiency, two computations * * * will be required. First, a computation of the total deficiency, including any applicable penalties should be made, without taking into consideration the innocent spouse provisions. Next, a separate computation of the liability, including penalties, of the non-culpable spouse. This computation will start with the total corrected taxable income without regard to the innocent spouse provisions and will eliminate therefrom the adjustments for which relief is provided under such

---

[4] In addition to the $900,525 claimed loss, two self-operating mathematical items are also considered--a $8,147 reduction for "medical" and a $300 increase for "contributions".

public law.  This latter computation arrives at the
amount of the liability which is considered joint.  The
difference between such joint liability and the total
deficiency will constitute the separate liability of
the culpable spouse.  * * *

It is noted that respondent's manual provisions have no
binding effect on petitioner or the Court.  See, e.g., Zimmerman
v. Commissioner, 71 T.C. 367, 371 (1978), and cases cited
therein, affd. without published opinion 614 F.2d 1294 (2d Cir.
1979) (involving the lack of effect of a taxpayer's reliance upon
a tax guide issued by the Commissioner).  Petitioner, however,
agrees with respondent that the above-quoted manual provisions
"[set] forth how the computation should be made."

Petitioner agrees with respondent that the first step is to
begin with the notice of deficiency computation of the income tax
deficiency and additions to tax.  Petitioner also agrees that the
next step is to compute the separate liability of the so-called
nonculpable or innocent spouse, which, according to the manual
provisions, is the portion of the liability that is considered
joint.  And, finally, the difference between the joint liability
and the total liability constitutes the individual liability of
the so-called culpable spouse.

The core of petitioner's disagreement with respondent is the
computation of the liability of the innocent spouse, which is
also the portion of the liability that is joint.[5]  Petitioner

_____

[5] Petitioner does not allege that respondent's mathematical
(continued...)

directs us to a specific portion of the manual provisions, as follows:

> This computation will start with the total corrected taxable income without regard to the innocent spouse provisions and will eliminate therefrom the adjustments for which relief is provided under such public law.
> * * *

Petitioner contends that the elimination of the grossly erroneous leasing transaction is tantamount to permitting the deduction to the innocent spouse. Respondent treats the elimination language as disregarding the grossly erroneous leasing transaction so as not to charge petitioner, the innocent spouse, with income from the disallowance of the claimed loss. Respondent goes on to compute the effect of the disallowance of the short-term capital loss carryover, which is not an item for which innocent spouse relief was granted. In that manner, respondent arrives at a portion of the 1983 tax liability for which Mr. Friedman (the "culpable" spouse) and Mrs. Friedman (the "nonculpable" spouse) are both liable. That joint liability is then subtracted from the liability determined in the notice of deficiency, resulting in the portion of the liability for which only Mr. Friedman (the "culpable" spouse) is liable. We agree with respondent's approach and interpretation.

---

[5](...continued)
computation is in error. Petitioner's attack is one that concerns only theory or approach.

To understand the dynamics of the disagreement, we must consider some of the items reported on the 1983 Federal income tax return and the adjustments made to that return in the notice of deficiency. The return contained three significant items of income: $100,000 of wages, $122,356 of capital gain, and $19,912 of rents or royalities. The capital gain reported was a netted and reduced amount composed of a net long-term capital gain of $656,139 reduced by the $322,340 short-term capital loss carryover from 1980 and a $27,908 long-term capital loss, to arrive at $305,891, 40 percent of which ($122,356) was carried from Schedule D to page 1 of the return.

Accordingly, without considering the leasing transaction loss ($900,525[6]), approximately $242,000 of income was reported on page 1 of the 1983 return. Respondent, in the notice of deficiency, allowed $55,803 of the short-term capital loss carryover due to the fact that $271,800 had been used for the 1980 year. Respondent's determination resulted in $228,971.20 of capital gain income instead of the $122,356 reported, or an increase of $106,615.20. The $106,615.20 increase is the number on which respondent based the Rule 155 computation of petitioner's $53,307.36 income tax liability. Comparing the $53,307.36 and the $119,644.76 deficiency set forth in the notice of deficiency reveals the dichotomy between the portion of the

---

[6] The loss was reduced by $2,227 of miscellaneous income for a net amount of $898,298.

income tax liability that is joint and the portion from which petitioner has been relieved.

Section 6013(e)(1), for the tax years in issue, is expressed in terms of relief from liability for tax "to the extent such liability is attributable to such omission from gross income [of tax attributable to grossly erroneous items of one spouse]."[7] The benefit of section 6013(e) is provided in the form of relief from tax, not by permitting the innocent spouse to have the benefit of a "grossly erroneous" deduction.  Petitioner's relief from the grossly erroneous leasing transaction losses is, accordingly, limited to not subjecting her to tax liability attributable to the disallowance of the loss.  Petitioner was not an innocent spouse as to the short-term capital loss disallowance.  Accordingly, she would be liable, along with Mr. Friedman, for the portion of the liability attributable to the disallowed portion of the short-term capital loss item.

The "eliminate therefrom" language of respondent's manual addresses relief from tax liability attributable to a grossly erroneous item.  The manual language appears to be designed to deal with grossly erroneous items attributed to either omitted income or claim of a deduction, the disallowance of which generates additional income.  If computation of the joint

_____

[7] Later versions of sec. 6013(e)(1) have the phrase "substantial understatement" as a replacement for the phrase "omission from gross income".

liability results in zero joint liability, then petitioner (the innocent spouse) would be the recipient of a windfall in the form of relief from the portion of the income tax liability attributable to the short-term capital loss disallowance--relief that was not intended by section 6013(e).

To reflect the foregoing,

<u>Decision will be entered in the amounts proposed in respondent's computation.</u>