# United States Court of Appeals for the Federal Circuit

---

**STEVEN T. WALTNER,**
*Plaintiff-Appellant,*

**and**

**SARAH V. WALTNER,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2011-5105

---

Appeal from the United States Court of Federal Claims in case no. 10-CV-225, Judge Marian Blank Horn.

---

Decided: April 19, 2012

---

STEVEN T. WALTNER and SARAH V. WALTNER, of Avondale, Arizona, pro se.

STEVEN K. UEJIO, Attorney, Tax Division, Appellate Section, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief

were TAMARA W. ASHFORD, Deputy Assistant Attorney General, and BRIDGET M. ROWAN, Attorney.

_____

Before BRYSON, SCHALL, and PROST, *Circuit Judges.*

PROST, *Circuit Judge.*

This case is an appeal from a decision of the United States Court of Federal Claims dismissing the tax refund suit brought by Steven T. Waltner and Sarah V. Waltner ("taxpayers") for lack of subject matter jurisdiction. *Waltner v. United States*, 98 Fed. Cl. 737 (2011). Because we hold that Court of Federal Claims correctly determined that the taxpayers' tax returns for tax years 2004-2008 did not constitute refund claims over which the court had jurisdiction, we affirm.

BACKGROUND

The taxpayers filed joint original federal income tax returns for the tax years 2003 through 2006, followed by alleged amended tax returns seeking refunds for those same years.[1] The taxpayers also filed original returns in 2007 and 2008, seeking refunds.

A. Tax Years 2004, 2005, and 2006

For each of the taxable years 2004, 2005, and 2006, the taxpayers filed Form 1040. On each of these forms, the taxpayers reported taxable income, as well as taxable business income, capital gains, taxable ordinary divi-

_____

[1] The taxpayers do not appeal the dismissal of their tax refund claims for the tax year 2003, which was dismissed on statute of limitations grounds; thus, this opinion does not address the Court of Federal Claims decision with regard to 2003.

dends, and taxable interest. Accompanying each tax return was a Form W-2 for Mr. Waltner that reported wage income paid to him by New Century Mortgage Corporation and other companies.

Starting in 2008, the taxpayers began filing amended income tax returns on Form 1040X. For the 2004 taxable year, the taxpayers adjusted their gross income from $48,631 to $370, which was the amount of unemployment compensation received by Mrs. Waltner. On the accompanying Form 4852, Substitute for Form W-2, the taxpayers reported that Mr. Waltner's wages were zero and alleged that the payer New Century Mortgage Corp. "erroneously alleged payments of IRC section 3401(a) and 3121(a) wages." In response to the form's inquiry into efforts to obtain a Form W-2c, Corrected Wage and Tax Statement, Mr. Waltner stated "none, since most companies refuse to issue forms correctly listing payments of 'wages' as defined in 3401(a) and 3121(a)." The taxpayers also included Form 1099-DIV, listing the amount of dividends received as zero. The taxpayers submitted this form to rebut the payer's submission which alleged a payment reportable under 26 U.S.C. § 6042. The taxpayers submitted Forms 1099-INT, which all listed the amount of interest income as zero, and Form 1099-MISC listing zero non-employee compensation. The taxpayers seek $8,334.00, plus interest, as a refund claim for tax year 2004.

Similarly, the taxpayers filed an amended income tax return Form 1040X for tax year 2005, this time listing no taxable income and $0 in tax owed. As with the 2004 tax year, the taxpayers submitted various other amended forms, including Form 4852, Form 1099-DIV, various Forms 1099-INT and Forms 1099-MISC, all of which contained zeros for income and taxes owed. In addition,

the taxpayers included Form 8082, Notice of Inconsistent Treatment of Administrative Adjustment Request, in which they lowered their dividends to zero because the trust reporting dividends "is not a 'Trade or Business' within the meaning of 26 U.S.C. 7701(a)(26)." The taxpayers seek $5,582.00, plus interest, as a refund claim for tax year 2005.

As with tax years 2004 and 2005, the taxpayers filed an amended income tax return Form 1040X for tax year 2006, reporting adjusted gross income of $0.00. Again, the taxpayers filed accompanying Form 4852, Forms 1099-MISC, 1099-DIV, 1099-INT, and Form 8082, all of which replaced previously reported amounts with zeros. Additionally, the taxpayers filed Form 1099-S, which listed the gross proceeds as zero. The taxpayers seek $11,139.00, plus interest, as a refund claim for tax year 2006.

### B. Tax Years 2007 and 2008

In 2008, taxpayers also filed their federal income tax return Form 1040 for tax year 2007, reporting taxable income of $0.00, a reported tax due of $0.00, and an overpayment of $8,480.88. Rather than submitting a W-2 Form, they submitted Form 4852, Substitute for Form W-2, reporting Mr. Waltner's wages as zero and asserting that the W-2 provided by the payer "erroneously alleged payments of IRS Section 3401(a) 'wages'" even though he "received no such 'wages.'" As on all previously filed W-2c forms, Mr. Waltner again stated that he made no efforts to obtain a corrected W-2 from the payer. The taxpayers also submitted Form 4852, Substitute for Form 1099-R, asserting that the original form was incorrect because Mr. Waltner "received no such 'gains, profit or income' from a 'U.S.' 'employer.'" As with the amended tax returns, the

taxpayers submitted Form 1099-INT, reporting zero interest income received. The taxpayers subsequently filed two amended returns for tax year 2007, continuing to list all income totals as zero and adding Form 1099-DIV, which listed zero income from dividends. The taxpayers seek $11,457.88, plus interest, as a refund claim for tax year 2007.

In 2009, the taxpayer filed their federal income tax return Form 1040 for tax year 2008, reporting zero tax liability. Additionally, they submitted three Form 4852, Substitute for Form W-2s, each of which listed zero for wages earned. The taxpayers also submitted Form 1099-B, listing zero gross proceeds from Broker and Barter Transactions, again alleging erroneous payment of proceeds by the payer. The taxpayers seek $10,678.77, plus interest, as a refund claim for tax year 2008.

## C. The Court of Federal Claims Decision

On April 12, 2010, the taxpayers filed a complaint in the Court of Federal Claims seeking a claim for refund for six tax years: 2003, 2004, 2005, 2006, 2007, and 2008. They alleged that "[t]he amended returns filed by the Plaintiffs for the years 2003 through 2007 proved that Plaintiffs had, in fact, no tax liability for those years and were due a refund for overpayment made against the possibility of later proven income tax liability." The taxpayers also sought damages for the alleged violation of the Arizona statute A.R.S. § 330429 for a tax lien filed against Mrs. Waltner on December 30, 2009, as a result of penalties assessed for tax years 2003 through 2007.

The United States filed a partial motion to dismiss and a motion for summary judgment. In its reply, it changed its position, arguing that all the claims should be

dismissed because the Court of Federal Claims lacks jurisdiction over them or, in the alternative, the plaintiffs fail to state a claim for the taxable years 2004-2008. The taxpayers filed a cross-motion in response.

On April 22, 2011, the Court of Federal Claims dismissed the refund claims for tax years 2003 to 2008. With regard to tax year 2003, the court found that it lacked jurisdiction because the claim for refund was filed after the statute of limitations expired. *Waltner*, 98 Fed. Cl. at 756. With regard to tax years 2004 through 2008, the court found that it lacked subject matter jurisdiction because the taxpayers' amended returns and original returns that contained zeros in place of income did not constitute returns and thus were not proper claims for refund. *Id.* at 760-61. Alternatively, the court concluded that even if it had subject matter jurisdiction, the taxpayers' complaint would be dismissed for failure to state a claim because the taxpayers did not allege any facts sufficient to state a plausible claim for a tax refund. *Id.* at 763. With regard to damages claimed as a result of a tax lien, the court found that it did not have jurisdiction to enforce the Arizona state statute and, alternatively, could not exercise supplemental jurisdiction over the taxpayers' claim. *Id.* at 764-65.

## DISCUSSION

This court reviews de novo the Court of Federal Claims decision to dismiss for lack of jurisdiction. *Radioshack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009). As the Supreme Court has recognized, the United States can only be sued in instances where it has waived its sovereign immunity. *See United States v. Dalm*, 494 U.S. 596, 608 (1990). In the context of tax refund suits, the United States sovereign immunity is

construed narrowly and jurisdiction of the Court of Federal Claims is limited by the Internal Revenue Code, including 26 U.S.C. § 7422. *See United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 8-9 (2008). Section 7422(a), which governs civil actions for refunds, states:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). Thus, whether sovereign immunity has been waived and the Court of Federal Claims has jurisdiction over these refund claims depends on whether the taxpayers' submissions to the IRS constitute a claim for refund.

While a tax return can itself constitute an administrative claim for refund, the tax return must first satisfy various Treasury Regulations. Specifically, 26 C.F.R. § 301.6402-3(a)(5) states that "[a] *properly executed* individual . . . original income tax return or an amended return . . . shall constitute a claim for refund or credit . . . . if it contains a statement setting forth the amount determined as an overpayment and advising whether such amount shall be refunded to the taxpayer." (emphasis added). The Treasury Regulations also impose a specificity requirement to prevent against frivolous claims, requiring that for a return to constitute a claim, it "must set forth in detail each ground upon which a credit

or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof . . . . A claim which does not comply with this . . . will not be considered for any purpose as a claim for refund or credit." 26 C.F.R. § 301.6402-2(b)(1); *see also Kehmeier v. United States*, 95 Fed. Cl. 442, 444 (2010).[2]

Thus, under the applicable regulations, to be a valid return for purposes of a refund claim, the return must contain sufficient data to allow calculation of tax and must "evince[] an honest and genuine endeavor to satisfy the law." *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180 (1934). At issue here is whether amended and original tax returns that replace income reported on W-2s and other forms with zeros constitute properly executed returns that may serve as claims for refund. While this court has yet to analyze such circumstances, an overwhelming majority of the circuits have heard this issue and determined that forms that lack essential information—particularly, forms that are replete with zeros in place of a taxpayer's income—are not tax returns within the meaning of the Internal Revenue Code and thus cannot serve as a basis for a tax refund suit. *See, e.g.*, *United States v. Goetz*, 746 F.2d 705, 707 (11th Cir. 1984) ("alleged tax returns which do not contain any financial information are not 'returns'"); *United States v. Mosel*, 738

---

[2] To the extent that the taxpayers argue that § 301.6402-3 controls over § 301.6402-2, we disagree. The requirements of these two sections are not mutually exclusive, and a taxpayer must satisfy both for an income tax return to constitute a claim for refund. *See e.g.*, *Beckwith Realty, Inc. v. United States*, 896 F.2d 860, 863 (4th Cir. 1990) ("the taxpayer's full compliance with § 301.6402-3(a)(5) did not relieve it of also having to comply with the specificity rule set forth in § 301.6402-2(b)(1)"); *Hamzik v. United States*, 64 Fed. Cl. 766, 767 n.3 (2005).

F.2d 157, 158-59 (6th Cir. 1984) (per curiam) (holding that a Form 1040 in which the taxpayer indicated zero income from wages and interest and owing zero income taxes did not constitute a return "because [it failed] to include any information upon which tax could be calculated" and that "no reasonable person employing [the symbol zero] in these circumstances could understand that he submitted the information which is required in a tax return"); *United States v. Grabinski*, 727 F.2d 681, 686 (8th Cir. 1984) (finding that where taxpayer entered zero income in tax returns, IRS had insufficient information to calculate tax liability and thus the returns were not valid); *United States v. Rickman*, 638 F.2d 182, 184 (10th Cir. 1980) (rejecting argument that filing zeros in tax form gives sufficient income information); *United States v. Moore*, 627 F.2d 830, 835 (7th Cir. 1980); *United States v. Smith*, 618 F.2d 280, 281 (5th Cir. 1980) ("'returns' which contain nothing but zeros and constitutional objections, plainly do not even purport to disclose the required information"); *see also Maruska v. United States*, 77 F. Supp. 2d 1035, 1039 (D. Minn. 1999) ("The Plaintiffs' return, replete with zeros in responses to all inquiries—except the amount of refund claimed—and containing no recitation of the Plaintiffs' wages or other income, is not a return for purposes of the tax laws."); *Kehmeier*, 95 Fed. Cl. at 445 (holding that "tax returns reporting zero wages cannot serve as claims for refund because they fail to include information upon which a tax could be calculated."); *Hamzik*, 64 Fed. Cl. at 768 ("Plaintiff's Form 1040 is replete with zeros in response to most inquiries—except the amount of tax withheld and refund claimed—and thus failed to include any reliable information upon which the IRS could accurately calculate his taxes, or the amount of taxes he owed or had overpaid. . . . [and] 'under no circumstances can it be rationally construed as a return.'"). *But see United States v. Long*, 618

F.2d 74, 75 (9th Cir. 1980) (per curiam) (finding that "[a] return containing false or misleading figures is still a return"). As these cases indicate, "it is not enough for a form to contain some income information; there must also be an honest and reasonable intent to supply the information required by the tax code." *Moore*, 627 F.2d at 835 (citing *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453, 462 (1930) and discussing *Zellerbach Paper Co.*, 293 U.S. at 180).

We agree with these courts that a form that contains zeros in place of any reportable income does not constitute a valid tax return; it is not "properly executed" for purposes of § 301.6402-3(a)(5) and does not meet the specificity requirements imposed by § 301.6402-2(b)(1). Here, taxpayers submitted amended returns for 2004, 2005, and 2006 in which they replaced the income they previously reported, which was consistent with third-party information provided to the IRS, with zeros and inserted a string of zeros in their 2007 and 2008 tax returns that directly contradicted W-2s and other forms submitted by third parties to the IRS. The taxpayers admittedly took no action to obtain "corrected" third party forms that would corroborate their claims of zero taxable income. Thus, the taxpayers' amended returns for 2004, 2005, and 2006, as well as their returns for 2007 and 2008 do not implicate an "honest and reasonable intent to supply information required by the tax code" or rise to the level of specificity required by regulation. None of the forms submitted by the taxpayers constitute "properly executed" returns that can serve as claims for refund over which the Court of Federal Claims has jurisdiction.[3] We affirm the dismissal

---

[3] Because we affirm the decision of the Court of Federal Claims dismissing for lack of subject matter jurisdiction, we do not reach whether the taxpayers failed

of the taxpayers' claims for tax refund for lack of jurisdiction.

COSTS

Each party shall bear its own costs.

**AFFIRMED**

---

to state a claim and whether the court erred in considering exhibits relating to this issue.