114

Anthony J. and Maria T. NASHARR,
pro se, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 11–885T.

United States Court of Federal Claims.

May 22, 2012.

Anthony J. Nasharr and Maria T. Nasharr, Hinsdale, IL, plaintiffs, pro se.

Shelley D. Leonard, Washington, DC, with whom was Assistant Attorney General Kathryn Keneally, for defendant. David I. Pincus, Chief, and Mary M. Abate, Assistant Chief, Tax Division, Court of Federal Claims Section, of counsel.

## MEMORANDUM OPINION AND ORDER

MILLER, Judge.

This case is before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. The issue for decision is whether plaintiffs Anthony J. and Maria T. Nasharr [1] have met the required jurisdictional elements to proceed before the Court of Federal Claims on their request for an abatement of the penalty assessed for their failure to pay income taxes for the 2003 tax year. Argument is deemed unnecessary.

## FACTS

Although this case specifically concerns the circumstances surrounding the 2003 tax year, the developed factual record indicates that the plaintiffs' [2] tardiness problems with the Internal Revenue Service ("IRS") actually began during the 1996 tax year and continued through the 1999 tax year. For the years 1996 through 1999, plaintiffs failed to timely file or pay their income taxes and were subsequently assessed penalties for late filing and late payment and the interest that accrued on those deficits. See Def.'s Br. filed Apr. 2, 2012, Ex. 11, at 61–68. Beginning in February 2003, Mr. Nasharr began sending payments to the IRS.[3] See id. Ex. 10, at 60.

On February 20, 2003, Mr. Nasharr sent the IRS a check for $30,000.00. Id. On March 24, 2003, Mr. Nasharr sent a check for $20,000.00 to the IRS "to apply to my debt." Id. Ex. 10, at 57. Again on April 24, 2003, Mr. Nasharr sent the IRS a check for $105,000.00 "for application to my debt." Id. Ex. 10, at 58. Mr. Nasharr sent a final check in the amount of $72,000.00 on September 2, 2003.[4] Because plaintiffs failed to designate how these funds should be applied to their outstanding balance, the IRS credited their tax account in chronological order, beginning with the 1996 tax year balance. See id. Ex. 11, at 61–68. It appears from the Account Transcripts that with the final payment in September, plaintiffs had resolved their outstanding balance for the 1996 through 1999 tax years. Id. Ex. 11, at 68.

At the same time in 2003 when Mr. Nasharr was making these voluntary payments on his outstanding balance, he was experiencing professional difficulties. In 2003 Mr. Nasharr, an attorney, was a name-partner in the law firm Forran Nasharr & O'Toole, LLC, of Chicago, Illinois. See id. at 2; id. Ex. 1, at 13. However, in 2004 Mr. Nasharr was "ousted from the partnership he helped create by his two former partners." Compl. filed Dec. 19, 2011, ¶ 5. Due to the contentious nature of the firm's dissolution, Compl. ¶¶ 5–6, Mr. Nasharr did not receive his Schedule K–1, Partner's Share of Income, Credits, Deductions, etc., for the 2003 tax year until October 5, 2004—well past the deadline to timely file a return. See Def.'s Br. filed Apr. 2, 2012, Ex. 3, at 19, 22. The Schedule K–1 reflects that Mr. Nasharr earned $171,832.00 in income in 2003. Despite receiving the Schedule K–1 in October

---

1. The allegations of the complaint primarily concern Mr. Nasharr.

2. Defendant notes that for the 1996 through 1999 tax years, plaintiffs filed either as "Single" or "Married Filing Separate," but for the 2003 tax year filed "Married Filing Jointly." Def.'s Br. filed Apr. 2, 2012, at 4 n. 4. For simplicity's sake, the court will continue to refer jointly to plaintiffs, but notes that the Nasharrs' problems with the Internal Revenue Service ("IRS") prior to 2003 seem to be the result of Mr. Nasharr's actions alone.

3. The complaint also alleges that Mr. Nasharr designated $19,634.00 in withholding in 2003 to be applied to his outstanding tax balance, but the court has seen no evidence of this in the documentation submitted. See Compl. filed Dec. 19, 2011, ¶ 3.

4. The record clearly reflects that Mr. Nasharr submitted four payments to the IRS in 2003. It is not at all clear why plaintiffs aver that Mr. Nasharr "sent voluntary payments of $197,000.00" when it appears as though he actually submitted $227,000.00 in payments. See Compl. ¶ 3.

2004, plaintiffs took no immediate action to file a return for the 2003 tax year. Instead, on July 17, 2007, the IRS prepared a Substitute for Return, and on March 31, 2008, assessed the amount plaintiffs owed in taxes as $258,252.00. *See id.* Ex. 4, at 24; *id.* Ex. 5, at 33. To this amount, the IRS assessed late filing and failure to pay penalties and calculated the accrued interest on the outstanding balance. *See id.*

Plaintiffs filed their 2003 tax return on May 10, 2009, and reported owing $197,643.00 in taxes to be offset by $19,634.00 in previous withholdings, resulting in a total tax balance of $178,009.00. *See id.* Ex. 6, at 42. In response, the IRS adjusted the penalties assessed and abated some of the original penalty amounts. *See id.* Ex. 4, at 25; *id.* Ex. 5, at 34. Dissatisfied with only this partial reduction, on May 27, 2009, plaintiffs submitted Forms 843, Claim for Refund and Request for Abatement, and requested that the IRS abate both the failure to file and failure to pay penalties for reasonable cause. *See id.* Ex 1. The IRS denied relief on December 18, 2009. *Id.* Ex. 7. In the letter sent to plaintiffs, the IRS provided information on the appellate options available to taxpayers in plaintiffs' situation. *Id.* They may either appeal the decision directly to the Office of Appeals or,

> [i]f you don't appeal, you may file a claim for refund after you pay the penalty. If you want to take your case to court immediately, you should request in writing that your claim for refund be immediately rejected. Then you will be issued a notice of disallowance. You have two years from the date of the notice of disallowance to bring suit. . . .

*Id.* Ex. 7, at 45.

Plaintiffs elected to appeal the decision, but their appeal similarly was denied on November 3, 2010. *Id.* Ex. 8. In the letter sent to plaintiffs explaining the Appeals Tax Specialist's decision, plaintiffs were again advised, as follows:

> Since your representative has stated that he does not agree with my determination, your next level of appeal would be to file a formal refund suit with either the United States District Court or the United States Claims Court. After the penalty charges have been paid, you may file a claim for refund on Form 843. . . . Include a written statement that your claim for refund be immediately disallowed. You will then be issued a notice of claim disallowance.
>
> You will have two years from the date of the notice of disallowance to bring suit in the appropriate [court].

*Id.* Ex. 8, at 49. In December 2010, plaintiffs next chose to file suit in the United States Tax Court again seeking an abatement of the penalties that had been levied for their delinquent filing and failure to pay income taxes in 2003. *Id.* Ex. 9. On April 22, 2011, the Tax Court dismissed plaintiffs' petition for lack of jurisdiction to review determinations with respect to the abatement of penalties. *Id.* Ex. 9, at 55–56.

The record indicates that plaintiffs have not made any subsequent payments to the IRS pertaining to their 2003 outstanding balance. Nonetheless, on December 19, 2011, plaintiffs filed the present action for "abatement of duplicate penalties for failure to pay of $53,689.00 plus associated interest accumulated."[5] Compl. at 1. Plaintiffs allege entitlement to abatement relief because the following grounds constitute reasonable cause for their delay in filing and paying their income taxes: (1) plaintiffs erred in failing to specify that the payments submitted in 2003 were to be applied to their 2003 income tax liability, an amount sufficient to cover the tax assessed, Compl. ¶ 3; (2) plaintiffs reasonably believed all tax liabilities were fully paid because of the payments submitted in 2003, *id.* ¶ 5; (3) Mr. Nasharr was unable to obtain the necessary records in time to timely file his 2003 return, *id.;* and (4) the "stress of [Mr. Nasharr's] law firm breakup" was a causal factor, *id.* ¶ 7.

---

5. As identified by defendant, although plaintiffs *specifically request only an abatement of the* failure to pay penalty, plaintiffs make references throughout the complaint to both the failure to file and failure to pay penalties. Plaintiffs stated in their response brief that they are, in fact, *"seeking only relief from failure to pay to avoid double penalties."* Pls.' Br. filed Apr. 23, 2012, ¶ 4.

### DISCUSSION

*I. Standards*

  *1. Subject matter jurisdiction pursuant to RCFC 12(b)(1)*

██ Documents filed *pro se* are "to be liberally construed ... and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (citation omitted) (internal quotation marks omitted); *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *Ruderer v. United States,* 412 F.2d 1285, 1292 (Ct.Cl.1969) ("[W]e have strained our proper role in adversary proceedings to the limit, searching this lengthy record to see if plaintiff has a cause of action somewhere displayed."). Nevertheless, while "[t]he fact that [a plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, ... it does not excuse its failures, if such there be." *Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir.1995). Although *pro se* plaintiffs are given some leniency in presenting their case, their *pro se* status does not immunize them from pleading facts upon which a valid claim can rest. *See, e.g., Ledford v. United States,* 297 F.3d 1378, 1382 (Fed.Cir.2002) (affirming dismissal of *pro se* plaintiff's complaint which sought, *inter alia,* a tax refund). Additionally, the filings of *pro se* plaintiffs receive less leniency vis-à-vis jurisdictional requirements. *See Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987) ("We agree that leniency with respect to mere formalities should be extended to a *pro se* party, .... [but] a court may not similarly take a liberal view of [a] jurisdictional requirement and set a different rule for *pro se* litigants only."); *see also Ledford,* 297 F.3d at 1382 (affirming dismissal of *pro se* plaintiff's complaint seeking unpaid tax refund).

██ Defendant levies the objection that plaintiffs' asserted claims are outside the court's jurisdiction. Jurisdiction must be established before the court may proceed to the merits of a case. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Courts are presumed to lack subject matter jurisdiction unless it is affirmatively indicated by the record; therefore, it is a plaintiff's responsibility to allege facts sufficient to establish the court's subject matter jurisdiction. *Renne v. Geary,* 501 U.S. 312, 316, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991); *DaimlerChrysler Corp. v. United States,* 442 F.3d 1313, 1318 (Fed. Cir.2006) ("[I]t is settled that a party invoking federal court jurisdiction must, in the initial pleading, allege sufficient facts to establish the court's jurisdiction."). Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction.... [The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) (citation omitted); *accord M. Maropakis Carpentry, Inc. v. United States,* 609 F.3d 1323, 1327 (Fed.Cir.2010).

If the facts purporting to establish jurisdiction are disputed, the court may consider evidence outside of the pleadings to resolve the dispute. *See Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir.1991) (applying rule in tax refund case). "[I]f a motion to dismiss for lack of subject matter jurisdiction ... challenges the truth of the jurisdictional facts alleged in the complaint, the ... court may consider relevant evidence in order to resolve the factual dispute." *Reynolds,* 846 F.2d at 747 (citation omitted); *accord Moyer v. United States,* 190 F.3d 1314, 1318 (Fed. Cir.1999). However, when a federal court hears a jurisdictional challenge, "its task is necessarily a limited one." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.*

*II. The full payment rule*

This court's jurisdiction is established by 28 U.S.C. § 1491 (2006), which provides that

"[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department. . . ." 28 U.S.C. § 1491(a)(1). In tax cases, this court often looks to 28 U.S.C. § 1346(a)(1) (2006), for more specific guidance on the scope of that jurisdiction. Section 1346(a)(1) provides, as follows:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws. . . .

28 U.S.C. § 1346(a)(1); *see Shore v. United States*, 9 F.3d 1524, 1525 (Fed.Cir.1993). From this statutory direction, defendant argues that this court lacks jurisdiction to adjudicate plaintiffs' claim because this court's jurisdiction is limited to those suits in which the taxpayer has paid fully both the tax liability at issue and the penalty prior to filing suit. Def.'s Br. filed Apr. 2, 2012, at 7; Def.'s Br. filed May 4, 2012, at 3.

Known as the "full payment rule," in *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on reh'g*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), the United States Supreme Court stated that "§ 1346(a)(1), correctly construed, requires full payment of the assessment before an income tax refund suit can be maintained." 362 U.S. at 177, 80 S.Ct. 630. The United States Court of Appeals for the Federal Circuit interpreted *Flora* in *Shore* to determine whether penalties also must be paid in full prior to filing in court. The Federal Circuit concluded that "if the taxpayers assert a claim over assessed interest or penalties on grounds not fully determined by the claim for recovery of principal [they must] prepay such interest and penalties as well as the

assessed tax principal." *Shore*, 9 F.3d at 1527–28.

This case is unusual in that plaintiffs are not making any refund claim on the underlying tax; plaintiffs are challenging only the penalty levied for their failure to pay. *See* Pls.' Br. filed Apr. 23, 2012, ¶ 4. Defendant points out that, in fact, plaintiffs' penalty claim would not be fully determined by their tax refund claim if plaintiffs had made a tax refund claim. Def.'s Br. filed Apr. 2, 2012, at 7–8. However, because plaintiffs still have an outstanding balance of $270,494.20, of which $168,730.22 is owed for penalties and interest, plaintiffs have not satisfied the full payment rule. *See* Def.'s Br. filed Apr. 2, 2012, at 9. Plaintiffs appear to counter this position by arguing that they have made sufficient payments towards their 2003 tax liability to cover the amount of accumulated penalty that they are challenging. *See* Pls.' Br. filed Apr. 23, 2012, ¶ 2 ("We assert that an amount exceeding the requested penalty has indeed been voluntarily paid."). This appears to be an extrapolation of the basic principle embraced in *Flora* that a taxpayer must have first paid the amount that he subsequently challenges in court. The upshot of plaintiffs' contentions seems to be that, because they are only challenging the failure to file penalty, that is the only amount that must have been paid prior to filing suit.

■ Despite the unique posture of the case, plaintiffs have failed to satisfy the jurisdictional requirement of prepayment prior to filing suit. First, although plaintiffs argue to the contrary, it does not even appear that they have paid the full amount of the failure to pay penalty that they are challenging. As noted by defendant, plaintiffs have submitted payments totaling $95,879.02 toward their 2003 tax liability. *See* Def.'s Br. filed May 4, 2012, at 2; Def.'s Br. filed Apr. 2, 2012, Ex. 4; *id.* Ex. 5. While this amount may have been sufficient to cover the failure to pay penalty, assessed at $42,737.50, it does not appear that plaintiffs designated that any of their subsequent payments be allocated to paying the failure to pay penalty. As such, defendant correctly notes that it was within the discretion of the IRS to distribute the payments "in order of priority that the Ser-

vice determines will serve its best interest" and the IRS accordingly applied those payments to the underlying tax balance rather than the penalty. *See* Rev. Proc. 2002–26, § 3.02, 2002–15 I.R.B. 746 (stating that if "the taxpayer does not provide specific written directions as to the application of payment, the Service will apply the payment to periods in the order of priority that the Service determines will serve its best interest" which, it then explains, will be in the order of tax then penalty then interest). Therefore, plaintiffs have not established that they have fully paid the failure to pay penalty.

Second, although plaintiffs advocate a conceptually plausible interpretation of *Flora,* the practical effect of their position would run counter to the full payment rule. Assuming that plaintiffs were correct that a taxpayer could pay only the amount of a penalty and then subsequently challenge only the penalty in court, then, were the taxpayer to succeed, the fact that an unpaid tax balance still existed would mean that the penalty would be refunded only up until the time of the judgment. Provided that the plaintiff did not pay off the entire balance of the outstanding tax liability, penalties would again begin accruing the day after judgment entered. The effect of such litigation gymnastics would be only to delay and obstruct the application of penalties to a delinquent taxpayer—a tactical maneuver not contemplated by applicable law. In order to gain access to the courts, a taxpayer first must pay the amount assessed by the IRS before he is allowed to challenge the validity of the amount. This procedure has been implemented because it is the one most likely to ensure that the IRS collects the revenue that it is owed. Similarly, those taxpayers who are delinquent in filing and paying their taxes should be penalized. Were this court to adopt plaintiffs' proposed scheme, however, it would be possible for litigation as to the validity of the underlying tax to then be brought in two steps. First, a plaintiff would pay and challenge the penalty while "conceding" the validity of the underlying tax. If successful, the hurdle for plaintiff under the full payment rule would be lowered, and the same money that was paid to challenge the penalty could then be substituted to pay for the tax. This would result in obstructionist litigation that would deprive the public fisc of the entire sum initially assessed and potentially ease the burden assumed by those taxpayers who chose not to file and pay their taxes on time. Neither of these results is desirable. *Flora* and *Shore* command that plaintiffs must pay both the full amount of the tax owed, as well as the amount of the penalty that they separately challenge, in order to establish jurisdiction. Because plaintiffs still have an outstanding tax liability of $270,494.20—inclusive of a failure to file penalty, a failure to pay penalty, and the resulting interest—plaintiffs have not fulfilled the mandate of the full payment rule.

III. *The requirement that plaintiffs must first file a claim for refund with the IRS*

■ Defendant also states that plaintiffs have not filed a claim for refund with the IRS prior to filing suit in this court. *See* Def.'s Br. filed Apr. 2, 2012, at 9–10; Def.'s Br. filed May 4, 2012, at 4. This court's jurisdiction in tax refund cases is limited by 26 U.S.C. § 7422(a) (2006), which provides, as follows:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). It is incumbent upon a taxpayer to demonstrate that this claim for refund has been filed because, as the Federal Circuit has noted, "[W]hether sovereign immunity has been waived and the Court of Federal Claims has jurisdiction over … refund claims depends on whether the taxpayers' submissions to the IRS constitute a claim for refund." *Waltner v. United States,* 679 F.3d 1329, 1333 (Fed.Cir.2012).

Plaintiffs have not demonstrated that they filed a claim for a refund of the failure to pay penalty that they now challenge. The record indicates that in May 2009, plaintiffs filed a Form 843 seeking an abatement of the penalties. *See* Def.'s Br. filed Apr. 2, 2012, Ex. 1. A fundamental difference exists between an abatement and a refund, and it has been established that a Form 843 submitted in pursuit of an abatement does not constitute a claim for refund. *See Ertle v. United States*, 93 F.Supp. 619, 620 (Ct.Cl.1950). Therefore, the Court of Federal Claims also lacks jurisdiction on this ground.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss for lack of subject matter jurisdiction is granted, and the Clerk of the Court shall enter judgment dismissing the complaint without prejudice.

**IT IS SO ORDERED.**

No costs.