*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-TX-0219

COMMONWEALTH LAND TITLE INSURANCE COMPANY, AS SUBROGEE OF ITS INSURED, COMM 2013-CCRE12 K STREET NW, LLC, APPELLANT

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2021-CVT-000698)

(Hon. Carmen G. McLean, Trial Judge)

(Argued June 4, 2025               Decided September 25, 2025)

*Caroline Y. Lee-Ghosal*, with whom *Nathan J. Bresee* was on the brief, for appellant.

*Sonya L. Lebsack*, Assistant Attorney General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief, for appellee.

Before EASTERLY and MCLEESE, *Associate Judges*, and THOMPSON, *Senior Judge*.

EASTERLY, *Associate Judge*: In this tax case, we consider two questions:

(1) may parties to a real estate transaction in the District avoid the requirements that

they record and pay taxes on ground leases of a term of thirty years or more by framing the creation of a ground lease as a retention, rather than a transfer, of a leasehold interest in the property, and (2) does a tax return for a deed that mentions a ground lease, but which contains no information about its terms, trigger the running of the statute of limitations period for the collection of taxes on the ground lease? We answer both questions in the negative. Accordingly, we affirm.

## I.     Tax Law in the District

As a general rule, whenever parties "transfer" an interest in real property in the District (other than shorter-term leases), they must record that transfer with the Recorder of Deeds and pay both transfer and recordation taxes.[1] D.C. Code §§ 47-1431(a) (recordation), 42-1103(a) (recordation tax), 47-903(a) (transfer tax).

---

[1] A "transfer" triggering recordation and taxation is broadly defined to include any transaction where "real property" "or any interest therein" is "conveyed, vested, granted, bargained, sold, transferred, or assigned." D.C. Code §§ 47-901(9) (transfer tax), 47-1401(28) (explaining that for the purposes of recordation, "[t]he term 'transfer' means a transaction by which real property . . . or any title or right to receive any title thereto, or any portion thereof, or any interest therein . . . is either directly or indirectly conveyed, vested, granted, devised, bargained, sold, exchanged or assigned by any document, instrument, writing, agreement, or by any means whatsoever").

Specifically, parties must record any "deed[2] or other document by which legal title to real property, an estate for life or a lease or ground rent (including renewals) for a term that is at least 30 years, or an economic interest in real property is transferred." *Id.* § 47-1431(a). "[S]ubmitting a deed [or other document] for recordation . . . is what triggers the assessment of" transfer and recordation taxes. *District of Columbia v. Design Ctr. Owner (D.C.) LLC*, 286 A.3d 1010, 1021 (D.C. 2022). The transferor and transferee are jointly and severally liable for both transfer and recordation taxes. D.C. Code §§ 42-1103(c), 47-903(c).

These recordation and taxation requirements plainly apply to transfers of ground leases for thirty years or longer. *Id.* §§ 47-1431(a), 42-1103(a)(1) ("At the time a deed, including a lease or ground rent for a term (with renewals) that is at least 30 years, is submitted for recordation, it shall be taxed . . . as follows: . . . ."), 47-903(a)(1)(A) ("If the interest in real property transferred is a lease or ground rent

---

2 "Deed" is broadly defined to include "any document, instrument, or writing (other than a lease or ground rent for a term (including renewals) that is less than 30 years), regardless of where made, executed, or delivered whereby any real property in the District, or any interest therein (including an estate for life), is conveyed, vested, granted, bargained, sold, transferred, or assigned." D.C. Code § 47-901(3) (transfer tax); *see also id.* § 42-1101(3)(A) (explaining that, for the purposes of recordation tax, "[t]he word 'deed' means any document, instrument, or writing, including a security interest instrument, wherever made, executed, or delivered, pursuant to which . . . [t]itle to real property is conveyed, vested, granted, bargained, sold, transferred, or assigned" or "[a]n interest in real property (including an estate for life) is conveyed, vested, granted, bargained, sold, transferred, or assigned").

for a term (including renewals) that is at least 30 years, the transfer tax will be computed" pursuant to calculations set forth in this provision.). A ground lease is typically a long-term lease, under which the tenant may install improvements on the property and maintain ownership of those improvements until the expiration of the lease, at which point title to both the land and the improvements reverts to the landowner.[3] *Design Ctr. Owner (D.C.) LLC*, 286 A.3d at 1015. Ground leases are usually entered into by a landowner and a developer, allowing the developer "to install improvements and operate the property for the production of income." *Id.*; *see also id.* at 1014. "To the landowner, a ground lease 'enables the property to be developed without cost,'" and "[f]or their tenant, a ground lease permits erection of a profitable improvement 'without a large capital expenditure [for the land].'" *Id.* at 1015 (second alteration in original) (quoting Stuart M. Saft, *Commercial Real Estate Transactions* § 8.2 (3d ed. July 2022 update)). Because ground leases are often created or transferred for minimal upfront consideration, the taxes for ground leases are usually based on the average annual rent during the term of the lease plus any consideration paid, in contrast to other transfers of real property which "are typically

---

[3] This contractual arrangement departs from the common law rule that "[w]hen a lessee of land erects a permanent building . . . [the lessor's] ownership attaches immediately." *Design Ctr. Owner (D.C.) LLC*, 286 A.3d at 1015 (alterations in original) (quoting *Hebrew Home for the Aged v. District of Columbia*, 142 F.2d 573, 574 (D.C. Cir. 1944)).

calculated as a percentage of the consideration paid for the transfer." *Design Ctr. Owner (D.C.) LLC*, 286 A.3d at 1021; *see* D.C. Code §§ 42-1103(a)(1)(B)(i), 47-903(a)(2); *see also MEPT St. Matthews, LLC v. District of Columbia*, 297 A.3d 1094, 1100 n.6 (D.C. 2023). If the average annual rent cannot be determined, then taxes are based on either the minimum annual rent ascertainable from the terms of the lease or the value of the property, whichever is greater. D.C. Code §§ 42-1103(a)(1)(B)(ii)-(iii), 47-903(a)(3).

To facilitate payment of these taxes, each deed or other document submitted for recordation "shall be accompanied by a [tax] return in such form as the Mayor may prescribe." D.C. Code §§ 42-1103(b)(1), 47-903(b)(1). "Each return shall set forth the consideration for the property, the amount of tax payable, if any," and other information required by the Deputy Chief Financial Officer. 9 D.C.M.R. §§ 503.4, 603.4. "For the purpose of proper administration of" the recordation and tax laws, the District "presume[s] that all deeds" and "transfers of real property are taxable" and are "required to be recorded." D.C. Code §§ 42-1107, 47-907, 47-1432. "The burden [is on] the taxpayer to show that a deed is exempt from tax" or "from the recordation requirement." *Id*. §§ 42-1107, 47-1432; *see also id.* § 47-907.

Once a return is filed, the amount of tax owed must generally be assessed by the District "within 3 years," and "[a] proceeding in court without assessment for the

collection of the tax [generally] shall not commence" after that period. D.C. Code § 47-4301(a). But if a party fails to file a return, the District may seek to collect the tax at any time. *Id.* § 47-4301(d)(1). In addition, no statute of limitations applies if a party files a "false or fraudulent return with the intent to evade tax," "willful[ly] attempt[s] in any manner to defeat or evade tax," or "fil[es] a real property tax exemption application." *Id.* The limitations period increases to six years when the filer omits from the return a certain amount of "gross income" or "amount of tax properly includible on the return." *Id.* § 47-4301(d)(2)-(3).

## II.    Facts and Procedural History

On August 2, 2013, Lano/Armada Harbourside, LLC (Lano/Armada) sold five condominium units at 2900 K Street NW (collectively, the property) to Allegiance 2900 K Street LLC (Allegiance) via a "Bargain and Sale Deed" (the 2013 Deed). The 2013 Deed granted to Allegiance title to the property while at the same time purporting to reserve to Lano/Armada a leasehold interest of undefined length in the property. For a sale price of $39,000,000, the 2013 Deed specifically conveyed:

> all right, title and interest of [Lano/Armada] to [the property] . . . LESS AND EXCEPT (i) a leasehold interest in and to the Premises (the "Leasehold Interest"), which Leasehold Interest is reserved to [Lano/Armada] solely under and subject to the terms, conditions and provisions

set forth in that certain Ground Lease of even date herewith between [Allegiance], as landlord, and [Lano/Armada], as tenant (the "Ground Lease") including the right of [Allegiance] to terminate the Ground Lease and the Leasehold Interest on the terms set forth therein, and (ii) all improvements and buildings located within the Premises (the "Improvements") for the term of the Ground Lease and subject to the terms, conditions and provisions of the Ground Lease.

The 2013 Deed added that "[t]he reserved interest of [Lano/Armada] in and to the Leasehold Interest does not create an estate for years or any other ownership interest."

On the same day, in a separate document entitled "Ground Master Lease," (the Ground Lease) Allegiance, identified as "Ground Lessor," agreed to lease the property to Lano/Armada, identified as "Ground Lessee." After noting the sale of the property by Lano/Armada to Allegiance and the purported reservation by Lano/Armada of "a leasehold interest," the Ground Lease "set forth the terms and conditions of such leasehold." Among other things, these terms and conditions

- defined "Leasehold Estate" as "collectively, (i) all right, title and interest of [Lano/Armada] in, to and under this Lease, and (ii) all right, title and interest of [Lano/Armada] in, to and under the" property.

- set the expiration date of the lease in August 2043, with options to extend further until 2130 (117 years after the execution of the lease).

- specified that Lano/Armada would pay rent for the first eleven years based on a schedule attached to the Ground Lease (per this schedule, the first two years of rent were set at $1,375,000 and rose approximately 5.5% each year to $2,475,00 in the eleventh year); thereafter, rent would be calculated based on a formula that allowed for lesser rent increases annually.

- stated that the Ground Lease and its exhibits "contain the entire understanding between [Allegiance] and [Lano/Armada] with respect to the ground leasing of the Premises, and are intended to be a full integration of all prior or contemporaneous agreements, conditions, understandings or undertakings between them with respect thereto," and disavowed any "promises, agreements, conditions, undertakings, understandings, warranties or representations, whether oral, written, express or implied, between [Allegiance] and [Lano/Armada] with respect to the ground leasing of the Premises other than as are expressly set forth in this Lease and the Exhibits appended to this Lease."

The Ground Lease prohibited its recordation "in any public records" and stated that "[p]ublic notice of [its] existence . . . has been given in the deed conveying the Premises from [Lano/Armada] to [Allegiance]." But it also provided that, "[a]t the request of either" party, the parties would be obligated to execute "a further

memorandum of this Lease for recordation," although it prohibited the inclusion of "the amount of Ground Rent."

Also on August 2, 2013, Lano/Armada executed a "Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing" (2013 Leasehold Interest Deed of Trust) with Cantor Commercial Real Estate Lending, L.P. (Cantor), granting Cantor a security interest in Lano/Armada's leasehold interest in the property in return for a loan of $39,500,000.

On August 5, 2013, Lano/Armada submitted the 2013 Deed alone for recordation. Along with the 2013 Deed, Lano/Armada submitted a tax return. Based on the reported conveyance of 100% of its fee interest in the property for consideration of $39,000,000, the return reported recordation tax liability of $565,500 and transfer tax liability of $565,500, for a total tax liability of $1,131,000. The Recorder of Deeds accepted the 2013 Deed for recordation, and Lano/Armada paid $1,131,000 in taxes.

The next day, Cantor submitted its 2013 Leasehold Interest Deed of Trust for recordation, along with a tax return that reported the transaction as a refinancing on which no taxes were owed. The Recorder of Deeds accepted the 2013 Leasehold Interest Deed of Trust for recordation, and no party paid any taxes on it.

In February 2019, Lano/Armada defaulted on the 2013 Leasehold Interest Deed of Trust. At that point, through a series of assignments, COMM 2013-CCRE12 K STREET NW, LLC (COMM 2013) had become the owner of what was formerly Cantor's interest in the 2013 Leasehold Interest Deed of Trust.[4] When Lano/Armada defaulted, COMM 2013 moved to foreclose on its leasehold interest in the property. COMM 2013 then purchased the leasehold interest in the property at the foreclosure sale, and Commonwealth Land Title Insurance Company (Commonwealth), COMM 2013's insurer, submitted the Leasehold Deed of Foreclosure for recordation, along with a tax return in March 2019.

But here Commonwealth hit a snag. The Recorder of Deeds refused to accept the Leasehold Deed of Foreclosure for recordation, having figured out, based on the Leasehold Deed of Foreclosure, that no one had ever recorded or paid taxes on the over thirty-year Ground Lease. The Recorder of Deeds told Commonwealth that it had to record the Ground Lease (or a memorandum of the lease) and to pay the required transfer and recordation taxes before it could record the Leasehold Deed of

---

[4] Cantor assigned its interest in the 2013 Leasehold Interest Deed of Trust to CCRE LOAN SELLER III, LLC, which in turn assigned the interest to U.S. Bank National Association, as trustee, for the benefit of the holders of COMM 2013-CCRE12 Mortgage Trust Commercial Mortgage Pass-Through Certificates, which in turn assigned the interest to COMM 2013-CCRE12 K STREET NW, LLC. All of these assignments were recorded, but no party paid transfer or recordation taxes on any of them.

Foreclosure. *See* D.C. Code § 42-407(2) (prohibiting the Recorder of Deeds from accepting a document for recordation where it relates to real property with unpaid taxes). On September 30, 2019, Allegiance and COMM 2013 submitted a memorandum of lease[5] and tax return for the Ground Lease, and Commonwealth paid transfer and recordation taxes of $1,037,207.62 for the Ground Lease "under protest," at which point the Recorder of Deeds accepted the memorandum of lease, as well as the Leasehold Deed of Foreclosure, for recordation.

Commonwealth filed an administrative refund claim with the Office of Tax Revenue (OTR), seeking repayment of the transfer and recordation taxes it had paid on the Ground Lease. *See* D.C. Code § 47-3310(a). After OTR denied this claim, Commonwealth filed a Petition for Recordation Tax in Superior Court, again seeking repayment of the taxes it had paid on the Ground Lease. *See id.* § 47-3303.

The parties eventually filed cross-motions for summary judgment. Commonwealth argued that the Ground Lease was not a taxable transfer of real property; rather, in the 2013 Deed, Lano/Armada had retained a leasehold interest in the property, as detailed in the Ground Lease. Alternatively, Commonwealth argued

---

[5] The memorandum of lease described the Ground Lease as "demising to [Lano/Armada] the property . . . together with (a) all improvements . . ., if any; and (b) all other appurtenances, rights, easements, rights of way, tenements and hereditaments incident thereto, including all development rights and entitlements relating to any portion of the Premises."

that the District did not have authority to collect taxes on the Ground Lease because the three-year statute of limitations period had already run. The District argued that the 2013 Deed and the Ground Lease documented two separate transactions, both of which were taxable: (1) the former transferred ownership of the property in fee simple from Lano/Armada to Allegiance, and (2) the latter transferred back to Lano/Armada a leasehold interest in the property. The District also argued that the collection of taxes on the Ground Lease was not time-barred because the statute of limitations period does not begin to run until a return is filed, and no one had filed a tax return for the Ground Lease until 2019.

After a hearing, the Superior Court denied Commonwealth's motion and granted summary judgment to the District. The court found that "[t]he Ground Lease include[d] a taxable event because it transferred Lano/Armada's rights to leasehold interests in the Subject Property for a period of more than 30 years" and dismissed Commonwealth's "argument about the retention of the leasehold interest [as] a red herring." The court also concluded that the District's effort to collect taxes owed on the Ground Lease was not time-barred. The court reasoned that "no party to the Ground Lease filed a return or tax form regarding the property interest transferred by the Ground Lease prior to the demand by the [Recorder of Deeds] in 2019," and "it was not the [Recorder of Deeds'] obligation to recognize the parties' failure to file a legally required return related to the Ground Lease based on

information available in the Deed." The court also observed that the failure to file a return "was not the type of 'honest mistake' that occurred in [*D.C. Office of Tax and Revenue v. Sunbelt Beverage, LLC*, 64 A.3d 138 (D.C. 2013)]," because "it appear[ed] that the parties to the 2013 transactions took great efforts to avoid taxes on the Ground Lease." This timely appeal followed.

### III. Analysis

"We review summary judgment rulings de novo, 'conduct[ing] an independent review of the record . . . in considering whether the motion was properly granted.'" *Design Ctr. Owner (D.C.) LLC*, 286 A.3d at 1019 (alterations in original) (quoting *Expedia, Inc. v. District of Columbia*, 120 A.3d 623, 630 (D.C. 2015)); *see also* D.C. Code § 47-3304(a) ("Decisions of the Superior Court in civil tax cases are reviewable in the same manner as other decisions of the court in civil cases tried without a jury."). We will affirm a grant of summary judgment "if the record demonstrates 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Sunbelt Beverage,* 64 A.3d at 140 (quoting Super. Ct. Civ. R. 56(c)). Lano/Armada presents two questions of law subject to our de novo review: whether the 2013 Ground Lease between Allegiance

and Lano/Armada was a separate, taxable transfer,[6] and if so, whether the statute of limitations period for this tax liability had run by the time the District sought payment in 2019.

### A. The Ground Lease Was a Separate, Taxable Transfer.

Both parties agree that, ordinarily, District law requires that ground leases of over thirty years be recorded and taxed. *See supra* Part I. They also do not contest that this case concerns a ground lease for a term of over thirty years. But, citing this court's case law explaining that the taxation of transactions involving real property turns on a practical assessment of the interests actually transferred, not on a formalistic analysis, *see Design Ctr. Owner (D.C.) LLC*, 286 A.3d at 1020; *MEPT St. Matthews, LLC*, 297 A.3d at 1099-1100, Commonwealth argues that *this* Ground Lease was not taxable because taxation is statutorily triggered only when an interest in real property is *transferred*, and in the 2013 Deed and the Ground Lease, Lano/Armada did not transfer anything, but instead *retained* a possessory interest it already had.

_____

[6] The District argues that we should defer to OTR's reasonable interpretation of the tax statutes, but we need not determine whether such deference to OTR is warranted, because we do not understand the parties to dispute the meaning of those statutes. Rather, as explained below, *see infra* Part III.A, the dispute between the parties centers on whether Lano/Armada retained a leasehold interest in the property when it sold it to Allegiance.

We agree with Commonwealth that recordation and taxation is triggered only when "legal title to real property, an estate for life or a lease or ground rent (including renewals) for a term that is at least 30 years, or an economic interest in real property is *transferred*." D.C. Code § 47-1431(a) (emphasis added) (explaining what triggers recordation); *see also Design Ctr. Owner (D.C.) LLC*, 286 A.3d at 1021 (explaining that "submitting a deed [or other document] for recordation . . . is what triggers the assessment of [transfer and recordation] taxes"). And we agree, and the District does not dispute, that a "transfer" occurs when an interest in real property is "conveyed, vested, granted, bargained, sold, transferred or assigned," but does not occur when an interest is simply retained. D.C. Code § 47-901(9); *see also id.* § 47-1401(28).

But looking at the "reality of the transaction," *MEPT St. Matthews, LLC*, 297 A.3d at 1100, we disagree that Lano/Armada retained a property interest in the form of a leasehold when it sold the property in 2013 to Allegiance "less and except . . . a leasehold interest." Rather, Lano/Armada transferred the fee simple interest in the property to Alliance, and Alliance then transferred a leasehold interest back to

Lano/Armada.[7]  These were two separate transfers of interests in real property, both of which were subject to recordation and taxation, no different than if Lano/Armada and Allegiance had entered the same deed but without the "less and except" clause and then executed the Ground Lease a day later.  We reach this conclusion based on black letter principles of property law and the record documents in this case.

We begin with black letter principles.  First, a leasehold interest is, by definition, "the lessee's interest in the lease itself." *Leasehold Interest*, Black's Law Dictionary (12th ed. 2024); *see also* 52 C.J.S. *Landlord & Tenant* § 328 (2025) ("A 'leasehold' is an estate in realty held under a lease and is the right to use property on which a lease is held for the purposes of the lease."); 49 Am. Jur. 2d *Landlord and Tenant* § 18 (2025) ("The relation of landlord and tenant cannot exist without a contract, express or implied, or 'lease.'"); Roger A. Cunningham, William B. Stoebuck & Dale A. Whitman, The Law of Property § 6.13 (2d ed. 1993) ("All

---

[7] The 2013 Deed states that, in addition to reserving a leasehold interest, Lano/Armada also reserves its title and interest in "all improvements and buildings located within the Premises (the 'Improvements') for the term of the Ground Lease and subject to the terms, conditions, and provisions of the Ground Lease."  Such an interest in improvements generally flows with a ground lease, *see supra* Part I, and, likely because this provision explicitly rests on the creation of the Ground Lease, neither party makes any argument about this language specifically; they focus instead on the language in the 2013 Deed purporting to reserve a "leasehold interest" and treat their arguments as rising and falling with that provision.  We therefore do the same.

leaseholds, it is often said, must be founded in an agreement between landlord and tenant.").

Second, the lease itself is by its nature a *transfer* of the right to possession from lessor to lessee. *See* Robert S. Schoshinski, American Law of Landlord and Tenant § 1:1 (1980) ("A lease is conventionally defined as a transfer of the right of possession of specific property for a temporal period or at will."); *id.* § 1:3 ("The landlord-tenant relationship is created only by the transfer of the right of possession to specific property."); 4 Thompson on Real Property, Thomas Editions § 39.02(a) (2024) ("Historically, leases have been characterized as a conveyance . . . ."); *id.* § 39.06(a)(3) (2024) ("A lease being a conveyance of an interest in land is more than a contract because it creates a leasehold estate in the tenant."); 2 Powell on Real Property § 16.02(3)(a) (2025) ("A lease transfers an 'estate' to the tenant, which gives the tenant a 'possessory' interest in the premises. . . . [I]t involves the creation on an estate interest, which is a possessory interest . . . ."); Friedman on Leases § 1:2.2 (2014) ("It is safe to say that leases are both transfers of property interests and contracts."); 49 Am. Jur. 2d Landlord and Tenant § 20 (2025) ("[A] lease conveys an interest in land, must be in writing in order to comply with the statute of frauds, and transfers possession of the land."); Cunningham et al., *supra* § 6.21 ("Since the act of leasing is a conveyance of an estate, the landlord necessarily impliedly covenants that he has an estate out of which the leasehold can be carved

and that he is not legally disabled from leasing."); Restatement (Second) of Property, Landlord & Tenant, § 1.2 ("A landlord-tenant relationship exists only if the landlord transfers the right to possession of the leased property.").

Third, this transfer cannot be made by one party to themselves; it requires the involvement of two different parties, the landlord or lessor and the tenant or lessee:

> A 'lease' is a bilateral agreement whereby one party gives up its control and possession of property to another in return for the latter's understanding to pay rent for its use. A lease transfers both possession and control of the leased premises to the tenant; the central distinguishing characteristic of a lease is the surrender of absolute possession and control of property to another party for an agreed-upon rental. A lease may be found where it is the intention of one party voluntarily to dispossess themselves of the premises, for a consideration, and of the other to assume the possession for a prescribed period."

52 C.J.S. Landlord & Tenant § 325 (footnotes omitted)); *id.* § 327 ("A lease is a conveyance by the owner of an estate to another of a portion of the owner's interest therein for a term less than the owner's own . . . ."); Schoshinski, *supra* § 1:1 ("Today, the lease is viewed not merely as a conveyance but also as a bilateral contract."); 4 Thompson on Real Property, Thomas Editions § 39.04(a) (2024) ("A lease conveys the possessory interest in property from a landlord to a tenant."); *see also* Restatement (First) of Property § 13 ("The word 'transfer,' as it is used in this Restatement, when applied to interests in land or in a thing other than land, means

the extinguishment of such interests existing in one person and the creation of such interests in another person."); *supra* (collecting sources explaining that a lease is by its nature a transfer).

Fourth, a lessor cannot transfer an interest in land that they do not already possess. *See* Cunningham et al., *supra* § 6.21 ("Since the act of leasing is a conveyance of an estate, the landlord necessarily impliedly covenants that he has an estate out of which the leasehold can be carved and that he is not legally disabled from leasing."); *see also id.* § 6.12 ("The tenant's leasehold is an estate carved out of some estate of longer duration that the landlord holds. Thus, the landlord, though he has given the tenant a present possessory estate, has retained that future part of the longer estate that follows the end of the leasehold.").

Fifth and finally, a lease agreement must include "four essential terms: designation of the parties, the description of the property, the rent obligation, and the duration of the lease." 4 Thompson on Real Property, Thomas Editions § 39.06(a)(8) (2024); *see also* 49 Am. Jur. 2d Landlord and Tenant §§ 18, 22 (same).

Taking these propositions together and applying them to this case, we conclude that the language in the 2013 Deed in which Lano/Armada purported to convey to Allegiance all interest in the property "less and except . . . a leasehold interest," did not result in Lano/Armada retaining a leasehold interest. At the time

of the sale, Lano/Armada did not and could not have a leasehold interest—which would have necessitated a leasehold agreement with itself—to retain. Moreover, the 2013 Deed did not create such a leasehold interest both because Allegiance did not own the property to allow it to lease the property back to Lano/Armada until the sale and because the 2013 Deed did not contain two of the essential terms of a lease: namely, the rent obligation and the duration of the lease. All the 2013 Deed did was transfer fee simple title to the property from Lano/Armada to Allegiance. The leasehold interest Lano/Armada acquired in the property arose by a separate instrument, namely, the Ground Lease, as the 2013 Deed acknowledged by stating that the leasehold interest was "reserved . . . solely under and subject to the terms, conditions and provisions set forth in that certain Ground Lease . . . between [Allegiance], as landlord, and [Lano/Armada], as tenant."

That the Ground Lease was the legal instrument that effected the transfer of the leasehold from Allegiance to Lano/Armada is confirmed by its text which provides for the "demise of the Leasehold Estate." *Demise*, Black's Law Dictionary (12th ed. 2024) (defining "demise" as the "transfer" or "conveyance of an estate"). After acknowledging the sale of the property from Lano/Armada to Allegiance and noting the purported reservation of a leasehold, the Ground Lease "set forth the terms and conditions of such leasehold," which included all four essential terms of a lease: the parties (Allegiance as lessor and Lano/Armada as lessee), description of the

property (provided in the attached "Exhibit A" titled "Description of Premises"), rent (as described in the attached schedule), and duration (thirty years with options to renew up to 117 years subject to Allegiance's unilateral right to terminate in certain circumstances).[8]  Further, the Ground Lease made clear that it was the *sole* instrument that created Lano/Armada's possessory interest in the property as a lessee.  The lease defined the "Leasehold Estate" as "collectively, (i) all right, title and interest of [Lano/Armada] in, to and under this Lease, and (ii) all right, title, and interest of [Lano/Armada] in, to and under the Premises."  And the lease included an integration clause that stated that the Ground Lease and its exhibits "contain the entire understanding between [Allegiance] and [Lano/Armada] with respect to the ground leasing of the Premises," and that disavowed any "promises, agreements, conditions, undertakings, understandings, warranties or representations, whether oral, written, express or implied, between [Allegiance] and [Lano/Armada] with respect to the ground leasing of the Premises other than as are expressly set forth in this Lease and the Exhibits appended to this Lease."

---

[8] These terms would make little sense if Lano/Armada had truly retained a leasehold when it sold the property to Allegiance.  In particular, we fail to see why Lano/Armada would pay millions of dollars in rent for something it already possessed, or why Allegiance would have the unilateral right under any circumstance to cancel a possessory right that Lano/Armada had retained.

Commonwealth seeks to avoid the conclusion that the execution of the sale of the property and the execution of the Ground Lease were two separate transfers of real property by resorting to the principle that a property owner may "carve out of his or her property as many estates or interests, perpendicular or horizonal, perpetual or limited, as it may be able to sustain" and has an "unrestricted right of disposal" of those interests. 63C Am. Jur. 2d Property § 43. But our holding does not conflict with that principle. We say nothing about whether Lano/Armada could have reserved for itself a possessory interest in its property—it simply did not do so here. And in any event, the means by which Lano/Armada could carve up and alienate its property is not at issue in this case; what is at issue is the tax implications of the decisions it made to sell and lease back the property. In other words, Lano/Armada can and did alienate its property in the way it wished, and nothing in this decision prevents others in the future from doing what Lano/Armada did here—but they must pay taxes that are due.

In sum, because black letter principles of property law and the language of the documents at issue here make clear that Lano/Armada sold the property to Allegiance and only then regained a possessory interest in the property by virtue of the Ground Lease, Lano/Armada and Allegiance engaged in two transfers of the property. Each transfer was subject to their own recordation and taxation requirements. *See supra* Part I. Because Lano/Armada only paid recordation and

transfer taxes for the sale of the property, the Superior Court correctly determined that taxes were still owed on the Ground Lease.

## B. The Statute of Limitations Does Not Bar the District's Recovery of Taxes Due on the Ground Lease.

Commonwealth argues in the alternative that, even if Lano/Armada should have recorded the Ground Lease and paid taxes on it at the time, the District's suit to collect taxes on the Ground Lease was untimely because three years had passed between when Lano/Armada filed a return for the 2013 Deed and when the District sought to collect taxes on the Ground Lease.[9] The District counters that the statute of limitations is triggered only by the filing of a return, and no one filed a return for the Ground Lease until 2019, at which point the District timely sought to collect taxes on it. We conclude that the statute of limitations does not bar collection of taxes on the Ground Lease because the return for the 2013 Deed did not constitute a return sufficient to trigger the running of the statute of limitations period for taxation of the Ground Lease.

---

[9] Commonwealth separately argues that "the Recorder of Deeds' untimely demand for the recordation of the 2019 Memorandum of Lease and payment [of] additional transfer and recordation taxes . . . exceeded its statutory authority and was *ultra vires*." But we understand this argument to rise and fall with its statute of limitations argument.

The District generally must assess transfer and recordation taxes "within 3 years after the return was filed." D.C. Code § 47-4301(a). But if no return is filed, the District may assess the tax at any time. *Id.* § 47-4301(d)(1). In *Sunbelt Beverage*, we considered "what constitutes filing a return under D.C. Code § 47-4301(a) or failing to file a return under D.C. Code § 47-4301(d)(1)(C)" for the purposes of triggering this statute of limitations. 64 A.3d at 145-52. We explained that not just any document labeled a return counts; a taxpayer does not "trigger the statute of limitations by submitting nothing more than an OTR-approved form with the taxpayer's identifying information on it," for example. *Id.* at 145. On the other hand, taxpayers are not "required to submit returns containing perfectly accurate and complete information so as to permit the correct calculation of tax" to trigger the statute of limitations. *Id.* at 147. Instead, some middle ground is required that "balance[s] a [taxpayer's] need for repose against [OTR's] need for sufficient time to identify liability." *Id.* at 146; *see also id* at 148 (interpreting the statute so as to uphold the "system of complementary responsibility" established by the Council, wherein "[t]axpayers must file returns, and the Mayor, through OTR, must review those returns, catch the inevitable mistakes, and demand additional taxes, all in a timely fashion"). Looking to Supreme Court caselaw interpreting the federal statute on which the District's statute of limitations was modeled, "we identif[ied] certain helpful guideposts." *Id.* at 150; *see also id.* at 145-46. We explained that,

to trigger the protection of a statute of limitations, a taxpayer must file a document that is intended as a return and that self-identifies for the correct tax liability, even if the return is only informational. The return must provide information about the taxpayer's [tax liability], but perfect accuracy is not required. Rather, if the return contains facts on which liability could be predicated, but lacks some data that could properly be characterized as a supplement or an amendment to the original form, the original form is not a nullity.

*Id.* at 150-51 (internal citations omitted). In addition to identifying these guideposts, we stressed the importance of "hold[ing] up the facts of th[e] case to the . . . case law." *Id.* at 146.

Employing this analysis, we held that the statute of limitations period had run in that case. *Id.* at 150. The taxpayer, Sunbelt Beverage, had "filed the wrong form for the right tax" when it accidentally filed a D-65 income tax form rather than a D-30 income tax form. *Id.* at 141; *see also id.* at 143-44. As a result, the company "accurately reported its gross income, deductions, and ordinary income, and identified its corporate parent, which also filed taxes in the District and which Sunbelt Beverage assert[ed] paid tax for Sunbelt Beverage's income," and "[t]he sole information Sunbelt Beverage failed to provide . . . was an apportionment factor which would have only reduced the amount of Sunbelt Beverage's taxable income." *Id.* at 141. We concluded that, "[i]n light of all of the other information provided in an effort to fulfill its tax obligations in the District, Sunbelt Beverage's failure to

provide OTR with its apportionment factor can be categorized as an 'omission[] . . . such as to make amendment necessary' to permit the correct calculation of tax," but it did not "render[] Sunbelt Beverage's return a nullity." *Id.* at 151 (quoting *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180 (1934)).

This case is a far cry from *Sunbelt Beverage*. The return filed with the 2013 Deed neither "self-identifies for the correct tax liability" nor "contains facts on which liability could be predicated." 64 A.3d at 150. The form for the return itself does not mention the Ground Lease. The form identifies five options for "Interest Conveyed": "Fee," "Easement," "Leasehold," "Leasehold Improvement," and "Other." Lano/Armada only selected "Fee"—not "Leasehold" or anything else. The form then states that 100% of the fee was transferred, lists the consideration for that fee transfer as $39,000,000, and calculates taxes owed based off that number. The form therefore affirmatively purports to be solely for the transfer of a fee simple interest—not for any leasehold interest—and contains no information about the Ground Lease.

Commonwealth argues, however, that 2013 Deed attached to the return, by virtue of referencing the Ground Lease, should have put OTR on notice that taxes

were due thereon.[10] We assume, without counterargument from the District, that we can look to the Deed, *cf.* D.C. Code § 47-903(b)(1)-(2) (directing that every deed transferring property "shall be accompanied by a return in such form as the Mayor may prescribe" and "[t]he return shall be an integral part of the deed"). But we disagree that the information in the Deed made up for the deficiencies in the form. To begin, the 2013 Deed only mentioned the reservation of "a leasehold interest" and a "Ground Lease" of unspecified time; thus, OTR, looking at the 2013 Deed, would not even have been alerted that the parties had entered into a taxable ground lease—that is, a ground lease for a term of thirty years or more. *See* D.C. Code §§ 47-1431(a), 42-1103(a)(1), 47-903(a)(2)-(3).

Our conclusion that the return, comprised of the form with the attached 2013 Deed, failed to trigger the three-year statute of limitations is buttressed by *Commissioner v. Lane-Wells Co.*, 321 U.S. 219 (1944)—one of the cases from which

---

[10] Commonwealth preliminarily argues that the 2013 Deed self-identified for the correct tax liability because it assessed liability for "transfer and recordation taxes assessed against the transfer of the real property interests documented in the 2013 Deed." But this simply recycles the argument we have already rejected, *see supra* Part III.A, namely, that the 2013 Deed reflects a single transaction—sale with retention of a leasehold interest—on which a single tax liability was owed. We evaluate Commonwealth's statute of limitations argument based on the premise that Lano/Armada entered into two transactions—transferring title in the 2013 Deed and transferring back a leasehold interest in the Ground Lease—each of which is separately taxable.

we identified our guideposts in *Sunbelt Beverage*. *See* 64 A.3d at 150. In *Lane-Wells*, a company was obligated to file two tax returns for two different tax liabilities: corporation income tax and personal holding company tax. 321 U.S. at 221-22. The company filed the corporation income tax return but not the personal holding company tax return, and the former did not contain the information that would have been included in the latter. *Id.* at 220, 223. The Supreme Court concluded that the filing of the corporation income tax return did not trigger the statute of limitations for the holding company tax; it noted that "the returns in the present case were insufficient to advise the Commissioner that any liability existed for the holding-company tax" and that, in fact, "[s]uch liability was expressly denied by the return." *Id.* at 223. Just as in *Lane-Wells*, Lano/Armada (1) entered into two taxable transactions and therefore incurred two tax liabilities, but filed only a return for one, (2) included no information from which OTR could have concluded that another tax was due, and (3) disclaimed that it had transferred or received any other separately

taxable interest.[11]

As part of its ruling that Lano/Armada had not filed a return for the ground lease, the Superior Court also determined that this failure was not an "honest mistake" under *Sunbelt Beverage*. We reject this line of reasoning as a basis for granting Summary Judgment for the District. In *Sunbelt Beverage*, one of the elements of our reasoning that the statute of limitations period had run was the fact that "[t]here [was] no dispute that Sunbelt Beverage filed its [incorrect form], honestly but mistakenly, in an effort to 'satisfy the law.'" 64 A.3d at 151 (quoting *Zellerbach Paper Co.*, 293 U.S. at 180); *accord Zellerbach*, 293 U.S. at 180 (considering inter alia whether the information provided "evinces an honest and genuine endeavor to satisfy the law"). Although the District seeks to argue otherwise, there is at least a genuine dispute of material fact preventing the grant of summary judgment, *Sunbelt Beverage, LLC*, 64 A.3d at 140, about whether the parties to the 2013 transaction were making a genuine effort to satisfy the law. Even

---

[11] The District takes a harsher line and asserts that even if the tax return filed along with the 2013 Deed had contained information on which tax liability could be predicated for both the sale and the Ground Lease, it still would not have triggered the statute of limitations because Lano/Armada was required to separately submit the Ground Lease for recordation and file a different return for that instrument. We conclude that we need not address the District's one-tax-one-return argument because Commonwealth's argument that the return for the 2013 Deed sufficed to trigger the statute of limitations for collection of taxes on the Ground Lease fails under the analysis we set forth in *Sunbelt Beverage*.

if it is true, as the Superior Court stated, that "the parties to the 2013 transaction took great efforts to avoid taxes on the Ground Lease," seeking to structure a transaction to limit one's tax liability is not inconsistent with making a genuine endeavor to satisfy the tax laws. We therefore rest our conclusion that the 2013 Deed did not trigger the statute of limitations for assessment of taxes on the Ground Lease on the basis that the return did not self-identify for the correct tax liability or contain facts on which liability could be predicated.

Commonwealth argues that a decision that the statute of limitations period has not run in this case would have negative policy implications. Specifically, Commonwealth argues that a holding that the return for the 2013 Deed did not trigger the statute of limitations for the Ground Lease would penalize them (and their predecessor, Lano/Armada) for mistakenly believing that their Ground Lease was not taxable. They also argue that such a decision would fully absolve the District of any responsibility to review the documents that are submitted for recordation. First, we are bound by our precedent. Second, we disagree that our holding that the statute of limitations period did not run will have adverse effects. If a party is uncertain about the taxability of a particular transaction, they may seek advice from OTR before or when the transaction occurs. *See, e.g.*, *MEPT St. Matthews*, 297 A.3d at 1096. Or they may record the document or a memorandum thereof and submit a corresponding tax return reporting a tax liability of zero, as Cantor did when it

recorded the 2013 Leasehold Interest Deed of Trust. By choosing not to record the Ground Lease (or a memorandum of it) and a corresponding tax return, or to consult the District about its tax liability for its uncommonly structured transaction, Lano/Armada took the risk that it, or its successors, might be held liable for transfer and recordation taxes more than three years later.

For the foregoing reasons, we affirm.

*So ordered.*